448

JACKSONVILLE PAPER CO. et al. v.
McCOMB.

No. 11999.

Circuit Court of Appeals, Fifth Circuit.
March 23, 1948.

Louis Kurz, of Jacksonville, Fla., for appellants and cross-appellees.

Bessie Margolin, Asst. Sol., Dept. of Labor, and Morton Liftin, Chief, Appellate Section, Dept. of Labor, both of Washington, D. C., Geo. A. Downing, Sr. Atty., Dept. of Labor, and James H. Shelton, Sr. Atty., Dept. of Labor, both of Atlanta, Ga., for appellee and cross-appellant.

Before SIBLEY and LEE, Circuit Judges, and COX, District Judge.

SIBLEY, Circuit Judge.

The appellants are individuals who conduct a manufacturing business and Jacksonville Paper Company, a corporation owned by the individuals, which buys their products and other goods and sells them through a main office and warehouse at Jacksonville, Florida, and through thirteen branch offices and warehouses at other points in Florida, Georgia and Alabama. They at first considered that their several businesses were intrastate and that none of their hundreds of employees were under the Fair Labor Standards Act, 29 U.S.C.A. § 201, and following, and did not attempt to conform to it. The Administrator, thinking otherwise, sued for and obtained an injunctive decree on Aug. 29, 1941, which in general terms required observance of the Act by

the individuals, and by the Jacksonville Paper Company as to its employees at Jacksonville and at six of the branches but not as to the seven other branches where it was thought no interstate commerce was done. On appeal to this court the injunction as granted was held to be too broad in its terms, and erroneous in excluding the seven exempted branch offices because some of the employees, who were not named or identified, were apparently engaged in interstate commerce. Fleming, Admr., v. Jacksonville Paper Co., 5 Cir., 128 F.2d 395. On certiorari the Supreme Court amplified the transactions which would be a part of such commerce, and affirmed our remand of the cause to the District Court for further findings and decree. Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L. Ed. 460. No further evidence was taken nor findings made in the District Court, but on June 3, 1943, there was formulated an amended and modified decree which eliminated the general injunction against violating the Act in any way; and in three subdivisions it enjoined the violation after the date of this decree of Sections 6, 7, 11(c) and 15 (a) (2), of the Act as to any employee, and as to certain kinds of shipments, but failed to find or forbid specifically any practice now in controversy. The Administrator on April 16, 1946, filed the present petition which, while not asserting any general failure to comply with the Act, asserted that as to several specific practices and as to thirteen named employees the above mentioned Sections of the Act, and therefore the injunctions, were being violated, and stated the grounds on which the defendants claimed that what they were doing was not in violation of the Act; and it prayed that the defendants be adjudged in contempt and be required to pay the unpaid wages due the affected employees as a vindication of the Administrator's right and a purge of the contempt.

After a full hearing the District Judge rendered an opinion in which he held that the practices attacked were not according to the Act, but the violations were not wilful, and none of them had been specifically considered and condemned by previous findings or decrees of the court, and that there was therefore no contempt of the injunctions in them; but that the practices ought to be stopped and to that end he would treat the proceeding as one to enlarge the injunction and prohibit the practices for the future. He decreed accordingly, enjoining one by one the practices he had found not in accord with the Act. The defendants have appealed, asserting error in condemning six of their practices. The Administrator has appealed, specifying as errors the refusal to adjudicate defendants in civil contempt and the refusal to require full compliance with the injunctions from their date.

■ We consider first the six assignments of appellants. Those relating to particular employees involve their exemption under Sect. 13(a), 29 U.S.C.A. § 213(a), as administrative and executive employees, or the question whether their work, mostly intrastate commerce, commingled to a substantial extent also interstate commerce. Their classification depends on questions of fact, and the conclusions of the District Court are not clearly erroneous. Two employees, in charge of what are contended to be separate departments, make a close case, but we do not think there is clear error as to them.

■ The corporation had a bonus plan used since May, 1942, whereby the directors at the end of the year had declared a bonus to some classes of employees based on a percentage of their total pay the preceding year, for which each was issued a note; but not payable at once and unconditionally, but in twelve instalments, one at the end of each month of the succeeding year if the employee were still working for the corporation. The bonus each year was not promised in advance but was voluntarily declared and apparently was no part of the regular wages legally due that year; and if immediately paid would have had no relation to the wages due the next year. But when it was declared payable as above, it seems to us that by continuing to work the employee could enforce payment each month, and that he was working for it as well as for his other wages, so that it became part of his regular compensation for each work week, and would have to be considered as such in computing any overtime.

Failure so to regard it was in violation of the Act.

■ The individual defendants had a practice of requiring the punching of a time clock and of not recording or compensating as time worked any hours not so shown by the clock, though the employee might claim he had worked but failed to punch the clock. During a year eleven such failures to punch are testified to have occurred among 110 to 140 employees. It does seem that an employer ought to have some protection along this line, and might be excused at least for inexact records so caused; but the Act requires that wages be paid for time actually worked, though the time is not proved in this particular way, and the courts cannot authorize the employer to make the clock the sole evidence of hours worked.

■ Turning to the Administrator's cross-appeal, the District Court having found that the practices attacked by the contempt petition were in fact unlawful, and that some of them were going on when the injunction decrees were made, nevertheless held that none had been actually considered before or specifically condemned and forbidden by the court, and that all had been continued without any wilful purpose to evade the injunctions, and it refused to hold the defendants in contempt. We find that the original petition filed in 1940 was in broad terms and did not mention these practices, though in the hearing on it evidence was introduced about some of them. The judge then presiding, esteeming that the main question was whether the employees at the various places of business were in commerce at all, and the admissions of the defendants having shown they were, except at certain branch offices, he announced that he would enjoin as to all save these doubtful branches, and he cut the evidence short and confined the trial to whether interstate commerce was done at those branches. He made no findings of fact about any of the practices now in question, and in his conclusions of law he stated that it would be unfair to make any specific findings since he had cut the evidence off. His decree was for a general injunction in the terms of the Act as to all save the excepted branches, and as to the employees at these branches an injunction was altogether refused. On appeal to this court nothing was discussed or ruled about the matters now in controversy, and the reversal was only because of the generality of the injunction which was granted, and because an injunction ought not to have been refused as to all the employees in the excepted branches, since some were there also engaged in interstate commerce. The Supreme Court held the same. Thereafter in the District Court no additional testimony was heard and no additional findings made, but the decree was reframed, but still for the most part in general terms, and with no specific reference to any practice now in controversy. The decree was in general complied with, and complaint is now made only as to a few employees affected by these particular practices. Since the court had never by finding or decree condemned them, their continuance might well be found not to have been wilful contempt or evasion. The Administrator waited three years to complain of them. The practice of Jacksonville Paper Company referred to as the "accumulated hours plan" for estimating overtime, the Administrator now attacks most vigorously, and the judge condemned it as illegal, and no error is assigned to this ruling. It began in 1940, and the judge finds that it was "believed by defendant to fully comply with the decision of the Supreme Court in Walling v. A. H. Belo Corporation, 316 U.S. 624, 62 S.Ct. 1223, 86 L. Ed. 1716"; and an amendment of it later "was an effort to take advantage of the prepayment plan theretofore promulgated by the Administrator of the Wage and Hour Division". This justifies his conclusion that there was no wilful evasion of the law or the injunctions, since they did not specifically refer to or condemn it. Under all the circumstances we think the court's conclusion is justified that there was no wilful contempt as to any of the practices which it was for the first time condemning, and that a more specific injunction was the proper way to protect the future.

There being no contempt found, we have no need to enquire whether if there had been the court could award reparation for unpaid wages as a purging of the con-

tempt. The remedy for not paying wages in full which is given by the Act, 29 U.S.C.A. § 216(b), is a suit by the employees, singly or in a body, or by an agent, in which double damages and attorneys fees are recoverable. The Administrator by Sect. 211(a) may bring suit "to restrain violations" under the jurisdiction given the court in those words by Sect. 217. A conflict of views has arisen as to whether the court can or should undertake to order retroactive reparation as an incident of a decree of restraint. Possibly such reparation would conflict with or destroy the employees' right to recover double damages. We express no opinion on the subject; but since the District Court of its own motion has extended the injunction to these specific practices, and since the Administrator is earnestly insisting on such reparation, and since a full affirmance of the judgment now before us would prevent any further modification without our leave, we now grant leave to the Administrator, if so advised, to apply to the District Court for modification on this line; but we give no instruction as to what the court can or should do.

Subject to this leave, the judgment appealed from is in all respects

Affirmed.