### McCOMB v. FRANK SCERBO & SONS, Inc. et al.

No. 235, Docket 21295.

United States Court of Appeals
Second Circuit.

Argued June 7, 1949.

Decided Aug. 18, 1949.

Leo Guzik, of New York City (Martin N. Whyman, of New York City, on the brief), for defendants-appellants.

Bessie Margolin, Asst. Sol., of Washington, D. C., U. S. Dept. of Labor (William S. Tyson, Sol., William A. Lowe and E. Gerald Lamboley, Attys., of Washington, D. C., and John A. Hughes, Regional Atty., of New York City, U. S. Dept. of Labor, on the brief), for plaintiff-appellee.

Before L. HAND, Chief Judge, and CLARK and FRANK, Circuit Judges.

CLARK, Circuit Judge.

Defendants' appeal from the judgment granted the Wage and Hour Administrator in his action under the Fair Labor Standards Act of 1938, § 1 et seq., 29 U.S.C.A. § 201 et seq., raises the single issue whether the Administrator can obtain not only injunctive relief, but also an order compelling the payment of unpaid overtime wages to employees thereto entitled under the Act. In the court below, defendants, manufacturers of office furniture in New York City, consented to the issuance of a permanent injunction restraining them from further violations of the Act, and specifically from failure to pay overtime compensation for work in excess of forty hours per week, 29 U.S.C.A. § 215(a) (2), and from failure to keep proper records, 29 U.S.C.A. § 215(a) (5). They contested, and now appeal from, only that portion of the decree which provides "that the defendants pay to their em-

ployees the amounts set forth in the appendices to the stipulation of June 30, 1948 [i.e., the schedules of "Back Wages Due Employees"], representing the difference between the amounts of wages actually paid to each such employee respectively and the amounts each such employee should have been paid respectively had he been compensated in accordance with the provisions of Section 7 of the Act [29 U.S.C.A. § 207]."

Defendants argue that the jurisdiction of the district court, under § 17 of the Act, 29 U.S.C.A. § 217, "to restrain violations of section 215 of this title," is impliedly limited by § 16(b), 29 U.S.C.A. § 216(b), which provides for employee actions to recover unpaid overtime and "an additional equal amount as liquidated damages." The remedy under § 15 is, in their view, an exclusive one. Thus of necessity it would abridge the traditional power of an equity court, once it has acquired jurisdiction in the premises, to grant full relief, including restitution or reparation where appropriate. Alexander v. Hillman, 296 U.S. 222, 56 S. Ct. 204, 80 L.Ed. 192; Porter v. Warner Holding Co., 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed. 1332.

But our court has already held, in Walling v. O'Grady, 2 Cir., 146 F.2d 422, 423, that a decree enjoining violations of § 15(a) (3) of the Act, 29 U.S.C.A. § 215(a) (3), which forbids discriminatory discharges of employees who sue for unpaid compensation, might include a provision reimbursing employees for loss of pay resulting from the discharges. Defendants attempt to distinguish the O'Grady case because the individual employee's right to sue for back pay lost by a discriminatory discharge is not explicit in the Act. We do not agree that the case is distinguishable, however, since our brethren said there: "The possession by the employee of a right to sue for back pay does not preclude a right of the Administrator. The latter represents not merely the employee but asserts a public interest which is promoted by requiring back pay as well as reinstatement." Walling v. O'Grady, supra, 146 F.2d at page 423. And they cited the concurring opinion of Judge Woodrough in Walling v. Miller, 8 Cir., 138 F.2d 629, 633, certiorari denied Miller

v. Walling, 321 U.S. 784, 64 S.Ct. 781, 88 L.Ed. 1076, dealing with back pay for which the employee can sue. The burden of Judge Woodrough's argument is that "As to such individual employees on whom the Act confers a right of action for deficiency in wages, there can be no doubt that the remedies provided for them by the Act are exclusive and controlling in any suits they bring. It creates their private right and defines and limits it. But the Administrator properly and exclusively represents the public interest. In that interest he invokes the power vested in the courts to compel obedience to the law by injunctional process. I see no good reason why the courts should not award him their mandatory injunctional order on proof of present unlawful withholding of minimum wages from those to whom the law says they must be paid, as well as an injunction against violations threatened to be committed in the future." Ibid. They also cited Fleming v. Alderman, D.C.Conn., 51 F.Supp. 800, a case where Judge Hincks suggested that failure to pay compensation due under the Act is a continuing offense, and payment of back wages can therefore be decreed as directive injunctive relief.

The basic ground for the O'Grady decision is to be found in the assertion, 146 F.2d at page 423, that "We can see little difference between giving reparation to an employee for loss of wages as ancillary to injunctive relief against withholding employment and giving back pay where an injunction for reinstatement has been violated as the court did in Texas & N. O. R. Co. v. Brotherhood of Ry. & S. S. Clerks, 281 U.S. 548, 50 S.Ct. 427, 74 L.Ed. 1034." We are in accord with this ruling and with the grounds upon which it was placed, and indeed believe that it has received further confirmation in the recent decision in McComb v. Jacksonville Paper Co., 336 U.S. 187, 69 S.Ct. 497, authorizing a contempt order to require payment of unpaid compensation under the Act. True, the Supreme Court formally disavowed any intention of deciding the instant issue when it said: "We can lay to one side the question whether the Administrator, when suing to restrain violations of the Act, is entitled to a

decree of restitution for unpaid wages." 336 U.S. at page 193, 69 S.Ct. at page 500. But this, we take it, was only usual judicial caution, not the discovery of a vital difference. And the remedial character of the two remedies is so clear and so similar that we do not believe a convincing distinction between them can be made.[1]

Defendants stress several considerations as requiring the contrary interpretation of the Act. Thus they say that recovery of overtime compensation "in equity" would unconstitutionally deprive a defendant-employer of a jury trial. But the answer is clear that it would do no such thing. The circumstances suggest doubt as to the existence of such a right here, but we need not pass on that question, since clearly whatever rights the defendants have will be equally safeguarded in this civil action— supplanting the old separate suits in law and equity—as in any other which can be brought. For it is now the separate issues, not the form of action, which control the right of jury trial. Federal Rules of Civil Procedure, rules 38, 39, 28 U.S.C.A. Again they say that the Administrator has only recently claimed this power and quote from his recent statement before the House Committee on Education and Labor asking for an amendment to give it to him because he now lacks it. But this summary statement hardly represented his full view, for he referred the Committee to the 1948 Annual Report of the Wage and Hour and Public Contracts Divisions, where there was a complete statement of the existing situation and a recommendation for clarifying legislation. That the Administrator should have recognized some occasion for legal doubts, particularly in view of certain adverse court rulings,[2] is surely not strange; nor

does that circumstance afford much light on the legislative intent.

Finally, defendants urge that the employer may be subjected to a multiplicity of suits. We are not called upon to decide definitely the status of a possible suit by the employee after the Administrator has recovered a decree of the kind here under review; but since the O'Grady case, which we are following, appears to accept this possibility, a word seems desirable. As there pointed out, the Administrator represents a public, the employee a private, interest. Properly to safeguard these two interests may well require the two remedies which are at most an inconvenience to the violating employer and not beyond the legislative power. To grant an exclusive remedy to the Administrator without a staff adequate to procure redress of all wrongs, or to the employees, many with too small claims to justify prosecution, would tend to limit or at times to nullify enforcement. Congress may have thought the practical difficulties remote and perhaps limited to the quite occasional case where an employee, dissatisfied with the Administrator's recovery without penalties, may wish to take the chance of renewing litigation. Even as to the employer, the advantage of escaping the double litigation which would be made usual by a holding restricting the Administrator to injunctive relief more than offsets the slight chance of a second suit to obtain the maximum recovery granted by the statute where the Administrator has already obtained a judgment of reparation. We see no occasion, therefore, to question the former conclusion that the considerations the other way outweigh the disadvantage to the employer.[3]

[1] See also the broad construction given the Jacksonville Paper Company case (which was a reversal of Walling v. Jacksonville Paper Co., 5 Cir., 167 F.2d 448, affirming D.C.S.D.Fla., 69 F.Supp. 599) by the Fifth Circuit in McComb v. Crane, 5 Cir., 174 F.2d 646, 647, in reversing a judgment based on its earlier ruling— which it is now "compelled to disavow"— in Walling v. Crane, 5 Cir., 158 F.2d 80. The latter case had been criticized in 60 Harv.L.Rev. 470.

[2] Compare the earlier adverse holdings

cited in note 1 supra with other authorities cited in the text.

[3] "If the court is powerless to require the prescribed payments to be made, it has lost the most effective sanction for its decree and a premium has been placed on violations. The fact that another suit [by employees under § 16(b)] might be brought to collect the payments is, of course, immaterial. For the court need not sit supinely by waiting for some litigant to take the initiative." McComb v. Jacksonville Paper Co., 336 U.S. at page

Since the argument of this appeal the Senate Committee on Labor and Public Welfare has recommended a series of amendments to the Fair Labor Standards Act, including one regularizing and limiting recovery by the Administrator of employee claims under the Act. Sec. 7 of S. 653 as revised by the ·Committee and re-· ported July 8, 1949, adding a new subsec. (c) to § 16 of the Act; Sen.Rep.No.640, 81st Cong., 1st Sess., to accompany S. 653, pp. 6–8. Defendants have called this development to our attention as support for their contentions. But even if such later and still inchoate legislative proposals can properly be resorted to as throwing light upon the legislative intent in 1938, it would seem that a strong argument can then be made that this new proposal, is not so much a grant of power as a further restriction in line with those already made by the Portal-to-Portal Act of 1947. 61 Stat. 87, amending 29 U.S.C.A. § 216(b). This had limited the original provision for a representa-· tive or class action—of the so-called "spurious" form, not binding upon nonappearing parties, Pentland v. Dravo Corp., 3 Cir., 152 F.2d 851; 3 Moore's Federal Practice 3450–3452, 3474, 2d ed. 1948—to require a definite consent in writing filed in court by an employee before he could be thus represented. The proposed subsection not only would authorize the Administrator to supervise the payment of unpaid minimum wages or overtime compensation due an employee, but would also require the consent of any employee to a claim made on his behalf by the Administrator by suit; and this consent would then constitute a waiver of his own right of action. But whatever the deductions to be made from these current proposals they do assume clearly—what to this writer at least had seemed axiomatic— that the Congress has and had full power to determine and control in such form as it deemed best the manner of securing the remedies authorized by the Act.

Defendants also attack the exercise of discretion in this case by the district court to order the payment. The circumstances,

however, including the small amounts involved, suggest this as a proper case for such an award, one indeed advantageous to the defendants, instead of separate enforcement suits. And the well-reasoned opinion of the district judge, D.C.S.D.N.Y., 80 F.Supp. 457, shows his careful consideration of all relevant issues.

Affirmed.

L. HAND, Chief Judge (concurring in result).

. I agree that the decision below followed from what has been decided before, and, had my brother been content with a caveat that left open whether recovery in the case at bar would not bar any employees who later prosecuted claims that the administrator has included in this action, possibly I might have said nothing, though I think that even then I might have felt bound to speak. But he has not done so; for, although he does not definitely commit us to a decision upon the point, he more than intimates an opposite opinion, from which I differ so positively that I cannot be silent. There is good reason for saying that the Administrator ought to have power to sue on behalf of employees, who do not sue for themselves; I have no doubt that many deserving claims might otherwise be lost. Even so, it is a long step to extend the ancient practice of courts of equity to situations in which the claims recovered, as an incident to an injunction, belong to others; and it is an utterly indefensible step, unless he represents the employees in his recovery on their behalf. Moreover, if he does so represent them, I cannot understand on what theory they are not bound by the judgment, like any other persons whose claims are prosecuted by an authorized representative. If employers are to be excepted from the universally accepted doctrine that a claim once decided is finally decided unless the decision is revoked, I should demand the most inescapable warrant for it in the words used. Indeed, were I among those who find those results unconstitutional, which chance to be deeply repugnant to

194, 69 S.Ct. at page 501. See also The Evergreens v. Nunan, 2 Cir., 141 F.2d 927, 152 A.L.R. 1187; Grandview Dairy

v. Jones, 2 Cir., 157 F.2d 5, certiorari denied 329 U.S. 787, 67 S.Ct. 355, 91 L. Ed. 675.

their personal feelings, I might even invoke the Fifth Amendment; for it seems to me to the last degree oppressive to hold that, after an employer has been put to a trial upon the claims of A, B, C and D, and has either succeeded in proving that he owes them nothing, or less than they demand, he may be later subjected to a series of actions by those very employees upon those very claims. I trust that I shall always be docile to what Congress may command; but for a result so shocking to my notions of fair play, I must find words which leave me no alternative. I do not find them; and I will not search for their equivalent in that circumambient aura, so often euphemistically described as "the policy of the statute."

FRANK, Circuit Judge (concurring).

I incline to think that this would be a good case in which to use Occam's razor,[1] and thus avoid squandering our energies by contriving a rule about the res judicata consequences of our decision, since that is a question not now before us. However, parsimony in contriving concepts may sometimes mean excessive intellectual stinginess[2] or lazy unwillingness to think a subject through; and my colleagues apparently regard this as such an occasion.

I suppose, therefore, I ought to say something on the res judicata issue. Of the two views, although I am not wholly in accord with either, I come somewhat closer to Judge Hand's than to Judge Clark's. In particular, however I am unwilling to go along with Judge Hand's intimations about unconstitutionality. I think it always unwise for a court to cross hypothetical constitutional bridges; crossing actual ones is dangerous enough.

At any rate, I want to bring out the fact that Judge Hand seems to me to leave open one question which I think ought surely to be left open for answering until a case arises where it specifically presents itself and is fully argued by counsel: If the Administrator, on behalf of certain employees, asks for and obtains a judgment for wages, but does not ask for liquidated damages, will that be res judicata in a later suit, for such damages, brought by any of those employees?

---

[1] Usually Occam's razor-like maxim is said to be: "Entities are not to be multiplied without necessity." Bertrand Russell reports, however, that Occam actually said: "It is vain to do with more what can be done with fewer." William James describes this "law of parsimony" as at best a labor-saving device.

[2] Kenneth Burke remarks that, correlative with Occam's precept, we need another: "Entities should not be reduced beyond necessity."