**J. Thomas PLATT**

v.

**BURROUGHS CORPORATION et al.**

**Civ. A. No. 76–1888.**

United States District Court, E. D. Pennsylvania.

Dec. 22, 1976.

Michael L. Levy, Philadelphia, Pa., for plaintiff.

Carter R. Buller, Philadelphia, Pa., for defendants.

## OPINION

GORBEY, District Judge.

The plaintiff, a former employee of defendant Burroughs Corporation, has included in his second amended complaint, two counts, the first of which purports to state a claim against Burroughs Corporation under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*, names five present or former employees of Burroughs, E. Gary Clark, Lucien Dick, Wilford Price, John Duff and John Scarpelli, as defendants, and alleges they conspired to deny him equal protection of the laws in violation of 42 U.S.C. §§ 1985(3) and 1986.

The defendants, Burroughs Corporation, Wilford Price, John Duff, John Scarpelli, the other two named defendants not having been served at the time, have filed a motion to dismiss plaintiff's second amended complaint pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) on the grounds that:

1. The court lacks jurisdiction over the subject matter of Count I of the second amended complaint because it does not allege that plaintiff has entirely complied with the jurisdictional prerequisite set forth in § 7(d) of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 626(d); and

2. Portions of Count I of the second amended complaint fail to state a claim upon which relief can be granted in that they are barred by the statute of limitations as contained in § 7(e) of the ADEA, 29 U.S.C. § 626(e); and

3. Count II of the second amended complaint fails to state a claim upon which relief can be granted under 42 U.S.C. §§ 1985(3) and 1986 because:

(a) the general remedy of § 1985(3) is preempted by the more specific provisions of the ADEA;

(b) it fails to allege properly the existence of a class-based animus on the part of the individual defendants;

(c) it fails to allege properly and specifically the existence of a conspiracy among the individual defendants;

(d) it is barred in part by the applicable statute of limitations; and

(e) section 1986 liability presupposes the existence of a viable cause of action under § 1985(3) and items 3(a) and 3(d) refute such existence.

The contention of Burroughs that Count I should be dismissed for failure to comply

with the notice provisions of ADEA requires a consideration of the notice provisions of § 7 of the ADEA.

The provisions of the Act which relate to notice are found in 29 U.S.C. § 626(d) which states:

"No civil action may be commenced by any individual under this section until the individual has given the Secretary [of Labor] not less than 60 days' notice of an intent to file such action. Such [action] shall be filed (2) in a case to which section 633(b) of this title applies, within 300 days after the alleged unlawful practice occurred or within 30 days after receipt by the individual of notice of termination of proceedings under State law, whichever is earlier.

"Upon receiving a notice of intent to sue, the Secretary shall promptly notify all persons named therein as prospective defendants in the action and shall promptly seek to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion."

Section 633(b) provides:

"In the case of an alleged unlawful practice occurring in a State which has a law prohibiting discrimination in employment because of age and establishing or authorizing a State authority to grant or seek relief from such discriminatory practice, no suit may be brought under § 626 of this title before the expiration of 60 days after proceedings have been commenced under the State law, unless such proceedings have been earlier terminated . . ."

█ The Commonwealth of Pennsylvania, in 43 P.S. § 952 *et seq.*, has prohibited age discrimination and designated the Pennsylvania Human Relations Commission as the supervising agency. Therefore the notice requirements of § 626(d)(2) are applicable in this case. Abundant case law has established the proposition that the notice requirements of § 626(d) are jurisdictional. *Raynor v. Great Atlantic and Pacific Tea Co.*, 400 F.Supp. 357 (E.D.Va.1975); *Powell v. Southwestern Bell Telephone Company*, 494 F.2d 485 (5th Cir. 1974); *Edwards v.*

*Kaiser Aluminum & Chemical Sales, Inc.*, 515 F.2d 1195 (5th Cir. 1975); *Goger v. H. K. Porter, Inc.*, 492 F.2d 13, 7 FEP Cases 71 (3d Cir. 1974); *Eklund v. Lubrizol Corp.*, 529 F.2d 247 (6th Cir. 1976); *Hiscott v. General Electric Co.*, 521 F.2d 632 (6th Cir. 1975).

It is alleged in paragraph 15 that:

"In January, 1976, the plaintiff filed a Notice of Intention to Sue with the United States Department of Labor and filed a complaint with the Pennsylvania Human Relations Commission, charging the defendant with age discrimination."

The original complaint was filed in this court on June 15, 1976.

The acts of discrimination with respect to each of which the notice requirement applies, as alleged by plaintiff in his self-styled "amended complaint in equity", are found in the following paragraphs:

"5. In May, 1972, the plaintiff was informed by an agent of the defendant that he was being demoted from his position of Manager of Employee and Industrial Relations (hereinafter Manager) to that of Personnel Specialist. This demotion was to be 'without prejudice' and without any decrease in compensation."

"11. Beginning in July, 1974, and continuing until March, 1976, the defendant gradually diminished the plaintiff's responsibilities, assigning him to less and less desirable tasks."

"12. From January 2, 1973, until May 21, 1976, the plaintiff received no increase in pay, although prior to this time he had received regular increases in pay."

"13. After May, 1972, notwithstanding the plaintiff's experience in the position of Manager of Employee and Industrial Relations, when the position did become open the defendant passed over the plaintiff and, without notice to him of the pending openings in this position, placed younger men, who were no better qualified than plaintiff, in it."

"16. In March, 1976, the defendant placed the plaintiff on an involuntary leave of absence as the result of his having filed this age discrimination charges."

"17. On May 21, 1976, in retaliation for filing his age discrimination charges, the defendant fired the plaintiff."

█ Plaintiff has not alleged in his complaint the contents of the January 1976 notice of intention to sue, therefore we do not know whether the alleged acts of discrimination nor the dates thereof designated in the two notices were identical.

It is also to be noted that the events stated in paragraphs 16 and 17 occurred after the plaintiff had filed a notice of intention to sue with the United States Department of Labor and a complaint with the Pennsylvania Human Relations Commission.

The first act of discrimination, an alleged demotion, is asserted to have occurred in May, 1972. Plaintiff has not alleged that he satisfied the notice requirements with respect to that act. Consequently, neither the Secretary of Labor nor the Pennsylvania Agency was given the opportunity to deal with the alleged discriminatory act. Accordingly, the conclusion must be that the court is without jurisdiction as to the first alleged act of discrimination.

The second alleged discriminatory act is a "failure to promote after May, 1972", which is certainly a foreseeable consequence of the alleged demotion in May, 1972. No dates were given with respect to the alleged failures. There is no allegation that timely notice was given with respect thereto. Next comes the allegation of discrimination based upon "failure to receive pay raises after January 3, 1973", another foreseeable consequence of his alleged demotion in May, 1972, and which might have been prevented had the plaintiff complied with the statute as respects the demotion itself. The fourth claim of discrimination rests upon "gradual diminishment of the plaintiff's responsibilities beginning in July, 1974, and continuing until March, 1976", another foreseeable consequence of the original demotion.

Naturally, it cannot be assumed that conciliation attempts would have resulted in success had timely notice been given; nor can it be assumed that success would not have been achieved. What can be concluded, however, is that the plaintiff is himself the cause of his failure to receive all the benefits conferred by Congress in the Age Discrimination Act.

The fear of employer retaliation is urged as an excuse for not complaining to the Secretary of Labor and the state agency. (Plaintiff's brief in opposition to defendants' motion to dismiss, page 5) That such a fear is genuine and one to be expected was considered by Congress because retaliation is specifically forbidden in 29 U.S.C. § 623(d).

█ To permit the fear of retaliation to operate as an excuse for failure to comply with the time requirements as to notice, would be to ignore the express language of the statute. The individual who thinks he has been the victim of any age discrimination must take the statute as he finds it. He is not obliged to give timely notice when he thinks he has been discriminated against, because of his fear of retaliation, but if he does not, he should be found to have, by conduct waived his right to the statutory benefits as respects the alleged acts of discrimination. One is reminded of the truism "you can lead a horse to water, but you cannot make him drink". Congress passed a statute but it cannot make the alleged victims of discrimination comply with its provisions. It then becomes a responsibility of the court not to subvert the intention of Congress out of sympathy for the employee, by a judicial rewriting of it for the benefit of one who has slept on his rights.

█ Plaintiff has not alleged in his complaint the contents of the statutory notice given to the Secretary of Labor or to the Pennsylvania Human Relations Commission in January, 1976. Since the agency complaint as well as the notice to the Secretary of Labor should include the identical alleged acts of discrimination, because the statute requires the utilization of both federal and state authorities, the complaint is defective. In view of the 300 day requirement, the complaint is likewise defective because it does not specify the dates of the alleged denial of pay raises and reductions

in responsibility. With respect to the two very significant events, involuntary leave of absence, and retaliation by firing, both occurred after the January 1976 notice of intention to sue and after the filing of a complaint with the state agency. Until there has been compliance with the statute as respects those alleged acts of discrimination, the court is without jurisdiction to consider them. Whether the attempts of the Secretary of Labor or the Pennsylvania Human Relations Commission, if given the opportunity, would be successful in resolving the matter is beside the point. There is no license for the court to hold the notice requirements as to these acts inoperative merely because there is not much likelihood that their efforts would be successful in view of the prior attempt to conciliate which had failed, and of which plaintiff had been notified on May 19, 1976. Whether such a pessimistic viewpoint is justified or not is irrelevant; retaliation is a specific wrong, just as in the case of a demotion, and Congress intended that its attempted resolution should be by the same means.

■ The defendant corporation also contends that Count I should be dismissed under 29 U.S.C. § 626(e) of ADEA which applies the statutory period of the portal-to-portal pay act, 29 U.S.C. § 255, which latter section creates a two year statute of limitations, and a three year statute if the violation is willful. Accordingly, Count I insofar as it relates to a cause of action based upon specific acts of discrimination more than three years prior to the filing of the complaint on June 15, 1976, is barred by the time limitation most favorable to the plaintiff, the three year limitation.

Plaintiff seeks to avoid the statute of limitations defense, as well as the notice requirements, by the contention that the discriminatory acts alleged are continuous in nature, therefore the court may exercise jurisdiction even though some of the alleged discriminatory acts occurred outside the limitation period.

While the courts have held in certain civil rights cases under Title VII, that where the discriminatory acts alleged are continuing in nature, the court's jurisdiction exists over a claim even though the discriminatory act occurred outside the limitations period proscribed in 42 U.S.C. § 2000e–5(e).

■ An analysis of such cases, involving for example, sex or race discrimination, indicates that the term "continuing" is not utilized as respects discrete acts of discrimination. What is requisite is a continuing discriminatory impact flowing from the original discriminatory act but which involves more than the usual effects of a discrete act such as reduction in wages, which could naturally be expected as a result of a particular act of discrimination.

As stated in *Cisson v. Lockheed-Georgia Co.*, 392 F.Supp. 1176 at 1181 (N.D.Ga.1975), a sex discrimination case:

"Review of the relevant cases indicates that claims are most often deemed 'continuing' when they complain of discriminatory hiring practices and are asserted in behalf of a class."

Here the claim is asserted only on behalf of the plaintiff.

Reference to some of the cases arising under the Civil Rights Act may be informative, although not conclusive. In footnote 2, page 4 of defendants' reply memorandum, numerous cases are cited which indicate that no discrete act of discrimination can itself be "continuing". The reason, of course, is obvious. "[a] broad extension of the continuing discrimination concept would arguably permit a lawsuit to be commenced irrespective of when the alleged discrimination occurred, thereby completely eliminating any period of limitations of Title VII actions." *Cisson v. Lockheed-Georgia Co., supra,* at page 1181. The decided case deals with such discriminatory acts as demotion and failure to promote, with resulting adverse effects on pay and seniority, which acts are involved in the case *sub judice.*

■ Any extension of the "continuing" violation theory must be considered in the light of the fact that section 626(d) "is intended to serve the purposes of the Act by insuring that the Secretary of Labor is called in for conciliation purposes when disputes are fresh and by informing the em-

ployer of his employee's intentions at an early date." *Moses v. Fallstaff Brewing Corp.,* 525 F.2d 92, at 94 (8th Cir. 1975). It is significant that the court also stated that "the Age Discrimination Act is remedial and humanitarian legislation. It is to be construed liberally to achieve its purpose of protecting older employees from discrimination." *Id.* at 93. It does not appear that it would be inconsistent with the foregoing observation to conclude that Congress never intended that the inclusion of past discriminatory acts with respect to which notice had not been timely given, can be lumped together with an alleged act of discrimination with respect to which timely notice was given, and thus to entitle the employee to relief as extensive as if there had been compliance as to each claim. If Congress had so intended it could easily have provided in the statute that timely notice as to any act of discrimination shall entitle the employee to relief as to all prior acts of discrimination. Congress did not so provide and the reason it wrote the notice requirements as it did is because, just as in the case of the statute of limitations, "Such periods are established to cut off rights, justifiable or not, that might otherwise be asserted and they must be strictly adhered to by the judiciary. *Rosenman v. United States,* 323 U.S. 658, 661, 65 S.Ct. 536, 538, 89 L.Ed. 535. Remedies for resulting inequities are to be provided by Congress, not the courts." *Kavanaugh v. Noble,* 332 U.S. 535, 539, 68 S.Ct. 235, 237, 92 L.Ed. 150 (1947), quoted in *Hiscott v. General Electric Co., supra.*

If plaintiff, for reasons of his own, refrained from giving notice each time a discrete act of discrimination occurred, the resulting loss to him cannot be attributed to Congress, nor can it justify what would in effect be a judicial rewriting of the statute. The injury, if there be one, is a self-inflicted injury. The moral is clear; as respects those between the age of 40 and 65, the Lord, and Congress, helps those who help themselves.

Accordingly, the complaint as to Count I must be dismissed without prejudice to the right of the plaintiff to file an amended complaint as to specific acts of discrimination with respect to which there has been timely notice, and which occurred not more than 300 days prior to the time of filing the original complaint, and which amended complaint must otherwise be in conformity with this opinion.

Defendant Burroughs Corporation, pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, filed a motion to strike plaintiff's prayer for punitive damages and for pain and suffering in Count I of the second amended complaint, on the ground that such damages are not permissible under the Age Discrimination in Employment Act of 1967 and therefore, are immaterial and irrelevant to plaintiff's cause of action. Defendant Burroughs has also moved the court to strike plaintiff's demand for a jury trial contending that relief under ADEA is equitable in nature and that Congress intended that complaints based on the ADEA be tried by the court. The resolution of the issue as to punitive damages for pain and suffering, requires a consideration of the statutory language, its legislative history, and a comparison of analogous statutes relating to discrimination.

The enforcement provision of ADEA, 29 U.S.C. § 626(b) provides in part:

"The provisions of this chapter shall be enforced in accordance with the powers, remedies, and procedures provided in §§ 211(b), 216 (except for subsection (a) thereof), and 217 of this title, and subsection (c) of this section. Any act prohibited under § 623 of this title shall be deemed to be a prohibited act under § 215 of this title. Amounts owing to a person as a result of a violation of this chapter shall be deemed to be unpaid minimum wages or unpaid overtime compensation for purposes of §§ 216 and 217 of this title: Provided, That liquidated damages shall be payable only in cases of willful violations of this chapter . . ."

The enforcement provisions of Fair Labor Standards Act (FLSA) provides in part:

"Any employer who violates the provisions of § 206 or § 207 of this title shall

be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages . . ."

It is thus apparent that the enforcement provisions of the ADEA limit the available remedies under the ADEA and the FLSA, requiring that both Acts be read together. The portions of each Act previously referred to would justify the conclusion that any *monetary recovery* under either Act is limited to the amount of unpaid minimum wages, unpaid overtime compensation or in certain instances an additional equal amount in liquidated damages. In neither Act is there any reference to compensatory damages or punitive damages.

Aid and comfort for those asserting a contrary conclusion is found in a portion of 29 U.S.C. § 626(b) ADEA which immediately follows that previously stated:

"In any action brought to enforce this chapter the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including without limitation judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation under this section . . ."

With respect to the intent of Congress in its use of the words "legal or equitable relief" one court has stated:

"The thrust of the Act is aimed at prohibiting arbitrary age discrimination in employment. 29 U.S.C. § 621(b). To effectuate this purpose most ADEA violations are remedied by compelling employment, reinstatement of promotion along with wages due during the period of the wrong. The Act draws its parameters of protected interests around the pecuniary relationship between the employer and the employee. Personal interests, such as bodily and mental integrity, are well outside the boundaries of the Act. Thus, to allow recovery for pain and suffering for

. ADEA violations would be beyond the scope of the Act and beyond the jurisdiction of the court."

*Sant v. Mack Trucks, Inc.,* 13 FEP Cases 854 at 855. (N.D.Calif.1976).

With respect to the claim for punitive damages, the opinion is ventured that if Congress had intended the allowance of punitive in addition to "liquidated damages", it would have written it into the Act, just as it did in § 812 of the Civil Rights Act of 1968, 42 U.S.C. § 3612, which authorizes private plaintiffs to bring civil actions to redress violations of Title VIII, the fair housing provisions of the Act, and provides that the "court may grant as relief, as it deems appropriate, any permanent or temporary injunction, temporary restraining order, or other order, and may award to the plaintiff actual damages and not more than $1,000 punitive damages . . . " The court, therefore, disagrees with the decision in *Murphy v. American Motor Sales Corp.,* (N.D.Ga.1976) 410 F.Supp. 1403, 12 FEP Cases 1090, where the court denied a motion to strike the prayer for punitive damages in an age discrimination case after pointing out that the age Act provides for both equitable and legal relief.

The court also relied upon the earlier case, *Rogers v. Exxon Research and Engineering Co.,* 404 F.Supp. 324, 11 FEP Cases 776 (D.N.J.1975), in which the court determined that the ADEA established a new statutory tort, allowing the recovery of compensatory out-of-pocket damages, and also damages for pain and suffering which the jury found to be in the not insignificant sum of $750,000. The aforementioned sum seemed a little high to the court as the result of which the plaintiff consented to a remittitur of $550,000.

The court concluded that:

"Once liability is established under the statute, therefore, the panoply of usual tort remedies is available to recompense injured parties for all provable damages. As the Supreme Court held in the context of Title VIII of the Civil Rights Act of 1968, as amended, Title 42 U.S.C. § 3612, a statute proscribing racial discrimination

in housing: 'A damage action under the statute sounds basically in tort—the statute merely defines a new legal duty, and authorizes the courts to compensate a plaintiff for the injury caused by the defendant's wrongful breach. As one Court of Appeals noted, this cause of action is analogous to a number of tort actions recognized at common law.' *Curtis v. Loether,* 415 U.S. 189, 195, 94 S.Ct. 1005, 1009, 39 L.Ed.2d 260 (1974)." 404 F.Supp. at 327; 11 FEP Cases at 778.

In reaching its conclusion the court did not allude to the fact that Title VIII specifically provides for the recovery of *actual* damages, whereas the ADEA, after providing for equitable relief confined "monetary" recovery to "unpaid minimum wages or unpaid overtime compensation" and liquidated damages in an equal amount if the violation is "willful", a distinction which would seem to be a vital one. See: *Van Hoomissen v. Zerox Corporation,* 368 F.Supp. 829 (M.D.Calif.1973).

This court agrees, therefore, with the following statement in a decision made September 24, 1976:

"It is the view of this court that the New Jersey court's analogy is misplaced and the ADEA does not create a new statutory tort. The language of the ADEA does not provide for the awarding of actual damages. Rather, the ADEA limits monetary recovery to lost wages.

"From a policy point of view, to allow recovery for pain and suffering would transform the ADEA from an act that seeks to eliminate and redress age discrimination to one for personal injuries. To effectuate voluntary compliance with the requirement of the ADEA, the Act requires conciliation, conference and persuasion before a civil action can commence. 29 U.S.C. § 626(b). If large tort recoveries are allowable under the ADEA, it is doubtful that alleged age discriminatees will enter into good faith conference and conciliation when around the corner lies the possibility of large dollar pain and suffering recoveries."

*Sant v. Mack Trucks, Inc.,* 13 FEP Cases at 855.

To this can well be added the statement that the threat of "large dollar pain and suffering recoveries", would aid in the conciliatory, conference and persuasion technique devised by Congress about as much as the "subtle" threat that would be implied if the alleged discriminatee was permitted to enter the conference room armed with a blackjack and a 45 calibre revolver.

It seems perfectly obvious that Congress intended the statutory procedure, with limited enforcement remedies, to be given a fair opportunity to succeed. If experience should indicate that the Congressional plan has not eliminated the evil sought to be corrected, it would be the Congressional prerogative to recognize that fact by amendatory legislation, and the courts should refrain from a judicial tampering with the statute in the interim. As pointed out by Judge Troutman, as respects another statute, in *Hodgson v. Stewart In-Fra-Red Commissary, Inc.,* 370 F.Supp. 503, 505, footnote 2 (E.D.Pa.1973):

"In 1938, Congress enacted the FLSA, whereby under Section 17 the Government was granted the power to seek an injunction to restrain violations of Section 15 of the Act. In *McComb v. Frank Scerbo & Sons,* 177 F.2d 137 (2d Cir. 1949), the Second Circuit held that in a Section 17 action for an injunction, the Court had the power to order the employer to pay to the employees their back pay consisting of unpaid minimum wages or unpaid overtime compensation. As a response to this decision, Congress in 1949 amended the Act to forbid an order or reparation in an action by the Secretary for an injunction. In 1961, Congress concluded that the 'enforcement provisions of the Act were not operating satisfactorily to protect the public interest. *Wirtz v. Jones,* 5 Cir. *supra,* 340 F.2d [901] at 903. Thus, Section 17 was amended to give the courts jurisdiction for the 're-straint of any withholding of payment of minimum wages or overtime compensa-

tion found by the court to be due to employees.'"

The New Jersey court in footnote 3, at page 331, refers *inter alia*, to a statement made by Representative Dwyer immediately before the House passed the Bill, identifying the psychological ills the statute would combat:

"When a man or woman of 55, for instance, loses his job, he faces the prospect of long months of *frustration, fear,* and *insecurity* as he searches for a new one. And the odds are heavily against his finding new employment similar in kind and pay to his former position—no matter how skilled and experienced and vigorous he may be. The cost of such an experience in terms of *mental anguish,* family *suffering,* lost income, and damaged self-respect is too high to measure. One must observe it at firsthand—as I am confident many of our colleagues have—to appreciate how *painful* and how unnecessary it all is."

The implication is, therefore, that the use of the italicized words conveyed the idea that the proposed statute provided for "tort" recovery for pain and suffering. On the contrary the conclusion is reasonable that the speaker was emphasizing the importance of passing a proposed statute, rather than speaking with respect to the remedies provided in it. If this is not so, how can we explain the failure of the House with its many attorney members, to rewrite the proposed statute before passing it, to include specifically for the recovery of damages for pain and suffering? It is certainly not because the statute as drafted and passed so clearly provides for recovery of damages based upon pain and suffering, that reasonable persons, including legally trained individuals, could not disagree on the question.

It follows, therefore, that defendant Burroughs' motion to strike in Count I the prayer for pain and suffering must be granted. There remains with respect to Count I, the motion of defendant Burroughs to deny plaintiff's demand for a jury trial.

A review of the cases reveals that in some, with respect to recovery of back pay under both the FLSA and the ADEA, there was a jury trial, and in others a trial by the court, with no indication that a jury trial had or had not been demanded. Such cases are not particularly helpful here. Thus, as pointed out by the court in *Chilton v. National Cash Register Company,* 370 F.Supp. 660, 662, footnote 1 (S.D.Ohio 1974):

"For example, jury trials were held in *Matthews v. Drew Chemical Corp.,* 475 F.2d 146, 147 n. 1 (5th Cir. 1973) and in *Stringfellow v. Monsanto Co.,* 320 F.Supp. 1175 (W.D.Ark.1970) but not in *Monroe v. Penn-Dixie Corp.,* 335 F.Supp. 231 (N.D. Ga.1971). The issue of a right to jury trial was not discussed in those cases."

In *Laugesen v. Anaconda Company,* 510 F.2d 307 (6th Cir. 1975), the issue of damages was not submitted to the jury but was, with the approval of counsel, decided in advance by the trial court. In footnote 2, page 312, the Court of Appeals wrote:

"We are not asked here to decide whether there is a right to a jury trial in cases brought under the Age Act. But see *Chilton v. National Cash Register Company,* 370 F.Supp. 660 (S.D.Ohio 1974), where it was held that there is a right to jury trial on issues of lost wages and benefits in Age Act cases. We note that trial by jury of civil rights cases under Title VII is uncommon, and has been discouraged. See *King v. Laborer's International Union,* 443 F.2d 273, 279 (6 Cir. 1973), and cases cited therein. See also *Curtis v. Loether,* 415 U.S. 189, 196, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974), wherein the Supreme Court declined to rule on the question of right to jury trial under Title VII, while noting that several circuits have viewed back pay as essentially an equitable issue, thus not requiring trial by jury."

In *King v. Laborer's International U. of No. America, U.L. No. 818,* 443 F.2d 273, 279 (6th Cir. 1971), the court wrote:

"The question of whether the District Court erred in granting Appellant's mo-

tion for a jury trial was not raised on appeal. However, upon remand, it would be well for the District Court to consider the growing body of jurisprudence which holds that the basic equitable issues involved in Title VII cases should not be subject to a jury determination. (citing cases)."

In such a situation, some comfort may be drawn from the statement in *Curtis v. Loether*, 415 U.S. at 196–197, 94 S.Ct. 1005 at 1009–1010:

"A comparison of Title VIII with Title VII of the Civil Rights Act of 1964, where the court of appeals have held that jury trial is not required in an action for reinstatement and back pay, is instructive, although we of course express no view on the jury trial issue in that context. In Title VII cases the courts of appeals have characterized back pay as an integral part of an equitable remedy, a form of restitution."

Absent a definite answer from the Supreme Court of the United States, or the Third Circuit Court of Appeals, the conclusion would be justified that if the majority view treats recovery of back pay as an integral part of the equitable remedy of restitution under Title VII, consistency would require it to be so treated under the ADEA.

On January 21, 1976, the issue was squarely faced in *Pons v. Lorillard*, 69 F.R.D. 576 (M.D.N.C.). There the court wrote:

"This matter is before the Court on defendant Lorillard's motion to strike the plaintiff's demand for trial by jury. The question for the Court's resolution is whether the Seventh Amendment right to trial by jury extends to an action for injunctive reinstatement, lost wages, liquidated damages, and costs and attorney fees under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–634 (1970). The question turns upon whether trial by jury is obtainable on the lost wages issue. Plaintiff makes no argument that the other issues will support trial by jury, and there is no authority to support such an argument."

The court then referred to *Chilton v. National Cash Register Company, supra,* as:

"[a]pparently the sole case of precedential value determining the right to jury trial under the Age Discrimination Act. *Chilton* rejected trial by jury on the issues of liquidated damages, and costs and attorney fees, but upheld the right on the issue of lost wages. Claims of employment discrimination coupled with prayers for lost wages were characterized as not only legal in nature as monetary damages, but also cognizable at law as claims analogous to common law actions for breach of contract by wrongful discharge and, furthermore, well within the practical abilities and limitations of the jurors. 370 F.Supp. at 665. Because it analyzed the operative enforcement section of the Age Discrimination Act, 29 U.S.C. § 626, in light of sections 16 and 17 of the Fair Labor Standards Act, 29 U.S.C. §§ 216, 217 (1970), the court, in finding a right to trial by jury on the lost wages issue, declined to compare age discrimination actions with Title VII cases. *Id.* at 666." 69 F.R.D. 576, 577.

"*Chilton* is by no means dispositive of the question. Actions for lost wages under the Age Discrimination Act are logically analogous to actions for lost wages under Title VII. Like awards of back pay under Title VII, the award of back pay sought by the plaintiff here is 'equitable —intended to restore the [recipient] to . . . rightful economic status absent the effects of the unlawful discrimination.' . . . The Fourth, Fifth, Sixth, and Ninth Circuits have found an award of back pay under Title VII to be equitable. (citing cases)." *Id.* at 577.

"It is concluded that a comparison of the enforcement provisions of the Age Discrimination Act and Title VII is the proper starting point for analysis of the right to jury trial for lost wages under 29 U.S.C. §§ 621–634." *Id.* at 577.

In a well reasoned opinion, with which this court is in agreement, it was concluded that "An award of back pay is not viewed as 'incidental' to injunctive relief, but as an

integral part of that relief." *Id.* at 579. As previously shown, such relief in Title VII had been determined to be equitable relief in the form of restitution.

Accordingly, the defendants' motion to strike plaintiff's demand for a jury trial must be granted.

 In Count II plaintiff asserts a cause of action against the individual defendants under the Civil Rights Act of 1871 (42 U.S.C. § 1985(3) and § 1986). Individual defendants insist that Congressional enactment in 1967 of the Age Discrimination in Employment Act provides the exclusive statutory remedy for discrimination based upon age with respect only to individuals who are at least 40 years of age but less than 65 years of age. 29 U.S.C. §§ 621, *et seq.*

The legislative history of the Act shows that it was regarded as the first federal statute which had as its purpose a prevention of discrimination in employment on account of age, by providing a remedy to those who became the victims of age discrimination. "We are assured that the House will pass the Bill; thus making this the first Bill passed by the U.S. Congress to prevent discrimination in employment on account of age . . . ." 113 Cong.Rec. 35056 (Remarks of Sen. Yarborough). "While this is the first federal law in this respect, a number of States have State laws . . . ." *Id.* p. 31253 (Remarks of Sen. Yarborough). "There is no federal law that deals with this critical issue directly, comprehensively, and adequately." 113 Cong. Rec. 34740 (Remarks of Congressman Perkins).

An analysis of the Act itself reveals that it is a precisely drawn, detailed statute, similar to those which have been held to provide the exclusive judicial remedy for a stated abuse. The statute in this case is remarkably like the statute passed by Congress in 1972, in amending the Civil Rights Act of 1964 to proscribe federal employment discrimination based on race, color, religion, sex, or national origin. The legislative history of that Act indicated that Congress, which was persuaded that federal employees who was treated discriminatorily had no effective judicial remedy, intended by the 1972 legislation to create an exclusive pre-empted administrative scheme for the redress of federal employment discrimination.

With that history, the Supreme Court, about six months ago, held that the Civil Rights Act of 1964, as amended in 1972, provided the exclusive judicial remedy for discrimination in federal employment. *Brown v. General Services Administration,* 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976).

Having the benefit of this recent case, as well as the cases cited in the opinion at page 1969, the conclusion is irresistible that the ADEA provides the exclusive judicial remedy for claims of age discrimination. This conclusion is consistent with the terms of the Act itself. "The provisions of this chapter shall be enforced in accordance with the powers, remedies, and procedures provided in §§ 211(b), 216 (except for subsection (a) thereof) . . . ." 29 U.S.C. § 626(b). Section 216 is a part of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*, and it has been held that the statutory remedy of that section is the sole remedy available to the employee for enforcement of whatever rights he may have under the FLSA. *Lerwill v. Inflight Motion Pictures, Inc.,* 343 F.Supp. 1027 (N.D.Calif.1972).

The reasoning of the court, at pages 1028–1029, amply justifies the conclusion it reached. Accordingly, the conclusion reached with respect to the Fair Standards Act, is the conclusion required by the reference to it in ADEA. Counsel for plaintiff has relied on cases which are distinguishable from the instant one, and has cited none which holds contra to the LERWILL case. Since Count II of the seconded amended complaint must be dismissed for the reason that the ADEA provides exclusive statutory remedy for discrimination based on age, it is not necessary to consider the defendants' contention, with which the court agrees, that the coverage of § 1985(3) is limited to invidious, class-based discrimination, and a group of persons over the age of 40 years

and under 65 is not a "class" for the purposes of that section. Since § 1986 liability presupposes the existence of a viable cause of action under § 1985(3) it follows that no cause of action has been stated under § 1986.

Accordingly, defendants' motion to dismiss Count I is granted, without prejudice, however, to the right of plaintiff to file a third amended complaint covering only those specific acts of alleged discrimination which occurred within 300 days of the unidentified day in January, 1976, when notice of intention to sue was filed with the United States Department of Labor, and when a complaint was filed with the Pennsylvania Human Relations Commission, and which acts were specifically included in both the aforementioned notice and complaint.

Plaintiff may also include in the amended complaint any acts of alleged discrimination which occurred after the aforementioned day in January, 1976, and with respect to which there has been compliance with the prerequisite provisions of 29 U.S.C. §§ 621–634.