**Elizabeth J. CRANDALL,
M.D., Plaintiff,**

v.

**PRUDENTIAL INSURANCE
COMPANY, Defendants.**

Civ. A. No. 87–3688.

United States District Court,
D. New Jersey.

July 29, 1988.

Genevieve K. LaRobardier, Margolis Chase, Verona, N.J., for plaintiff.

Richard C. Mariani, Apruzzese, McDermott, Mastro & Murphy, Springfield, N.J., for defendants.

## OPINION AND ORDER

LECHNER, District Judge.

This is an action in which a former employee alleges her employer discriminated against her on the basis of age and sex by failing to promote her in violation of the Age Discrimination in Employment Act ("ADEA") and Title VII of the Civil Rights Act of 1964 ("Title VII"). The plaintiff also alleges violations of New Jersey statutory and common law. In this motion the defendant moves to dismiss the complaint on various grounds or in the alternative for summary judgment. For the following reasons the motion for summary judgment is granted.

*Facts*

Plaintiff Elizabeth J. Crandall, M.D. ("Crandall") is a resident of New Jersey and is a physician licensed in New Jersey and New York. Complaint, ¶ 2; Affidavit of Elizabeth J. Crandall, M.D. ("Crandall Aff."), ¶ 1. Crandall received her medical degree from Columbia University College of Physicians and Surgeons in 1950. Crandall Aff., ¶ 3. Defendant The Prudential Insurance Company of America ("Prudential") is a New Jersey corporation with its principal place of business in Newark, New Jersey. Complaint, ¶ 3.

For approximately twenty years prior to her employment with Prudential, Crandall was in private practice. Crandall Aff., ¶ 3. In 1972 Crandall joined Prudential as a part-time insurance physician. *Id.* at ¶ 3. Crandall joined the full-time medical staff of Prudential as an associate medical director in June, 1975. *Id.* at ¶ 5. Crandall initially worked out of a Prudential office in Newark. Deposition Transcript of Elizabeth J. Crandall ("Tr."), 16–17. In 1976 Crandall was transfered to the South Plainfield office. Tr. 20–21. Her office was transferred to Prudential's Woodbridge office around the beginning of 1984. Transcript of Oral Argument, July 20, 1988 ("7/20/88 Tr."), at 7.

Crandall's husband, Charles E. Crandall, M.D. ("Crandall's husband"), is also a graduate of Columbia University College of Physicians and Surgeons and a physician licensed in New Jersey. Complaint, ¶ 11. Crandall's husband joined Prudential in 1976 as an associate medical director. *Id.*, ¶ 10. In November, 1978 the titles of all associate medical directors at Prudential, including those of Crandall and Crandall's husband, were changed to medical director. *Id.* at ¶ 7; Tr. 32.

Crandall states from November, 1978 to May, 1985 there were several openings at the functional vice president[1] level at Prudential. Crandall Aff., ¶ 8. Crandall states she was fully qualified for these positions and she had either "generally or specifically" expressed her interest and availability for the positions. *Id.* Crandall avers Prudential denied her each of these promotions and denied her requests to transfer to advance her career. *Id.* at ¶ 9. According to Crandall, in some instances Prudential required her to perform the functions of higher level positions without actually promoting her. *Id.*

Crandall asserts Prudential, at an unspecified time in 1985, offered her a lucrative early retirement plan. She states she discussed her potential for promotion with Prudential's management and based on their positive reaction and encouragement of her desired advancement to functional vice president, Crandall decided to forego early retirement. *Id.* at ¶ 11.

In May, 1985 Prudential offered Crandall a newly created position as Medical Director for Cost Containment, Group Department. This position was offered initially at the medical director level with a salary of $68,700.00. Crandall Aff., Ex. B. In a letter to Prudential, dated June 11, 1985, Crandall stated: "I am ready to accept your offer if it comes with the rank of functional Vice President and the benefits which accrue from that title." Defendant's Exhibits ("Ex.") D–9.

Around June 21, 1985 Prudential informed Crandall that due to organizational changes, the functions of the position of Medical Director for Cost Containment, Group Department had been changed. Crandall Aff., Ex. C. The title of the new position being offered to Crandall was Medical Director, PACRS, GFSO. The position continued to be offered at the director level with a salary of $68,700.00. *Id.*

In a letter, dated June 21, 1985, communicating this change in the position offered to Crandall, the Vice President of Medical Services at Prudential, Dan Dragalin ("Dragalin"), stated:

> With respect to future potential, as we discussed, I fully expect the position under consideration to be an FVP [functional vice president] level position in April, 1986. If you accept the position being offered, I can, at this time, realistically see no reason why you would not continue to occupy the position in April, 1986 (unless job performance is unsatisfactory —which I surely do not expect).

Crandall Aff., Ex. C.

In a telephone conversation with Dragalin around June 27, 1985, Crandall apparently declined this second offer because she was not offered an immediate promotion to functional vice president. Tr. 179. In a confirming letter, dated July 1, 1985, Dragalin stated: "[O]ur offer of a position for you here at GFSO in the form stated in my letter of June 21, 1985 is final and non-negotiable. I am genuinely sorry you will not consider acceptance without a concurrent offer of a promotion to FVP [functional vice president] level. As I stated, I am sure that such a promotion is in the cards for 4/86, but I am unable to effect that promotion at this time." Ex. D–11.

Crandall asserts that the offer of the new position without a promotion or salary increase was "an intolerable affront" which forced her to resign. Crandall Aff., ¶ 14. Crandall's last day of work with Prudential was August 2, 1985. Tr. 216. She continued to receive full salary and benefits from Prudential until September 9, 1985. Tr. 216–17. Beginning on September 9, 1985 Crandall began to receive a pension from Prudential. Tr. 217.

At the time she was offered the new position, Crandall was fifty-eight years old. Complaint, ¶ 22. Crandall alleges she was one of the older medical officers at Prudential and that one Prudential official later made references to "dead wood" when describing the future opportunities which could be created as a result of an early

---

**1.** Functional vice president is apparently the next step up the corporate ladder at Prudential from medical director, both in terms of title and salary.

retirement program.[2]  Crandall Aff., Ex. E.

Upon her resignation Crandall immediately secured employment with the American International Life Assurance Company of New York ("American"). She had apparently been actively seeking employment with American prior to her resignation. Tr. 203–05. Crandall began working at American on August 5, 1985. Tr. 203. Her starting salary at American was $75,000.00.[3]  Tr. 208.

Crandall asserts she learned sometime in 1986 that the position which had been offered to her at Prudential became three separate positions for three physicians. Crandall Aff., ¶ 12. Crandall also alleges Prudential placed an advertisement for a position entailing only some of her previous responsibilities but at a salary $13,000.00 higher than the salary Prudential had paid her. *Id.*, Ex. F; Complaint, ¶ 31.

Crandall claims it was not until July, 1986 that she realized she had been deliberately treated unfairly by Prudential. Crandall Aff., ¶ 16. On August 5, 1986 she sought the advice of counsel. *Id.* at ¶ 17. Prior to her consultation with counsel, Crandall states she was neither aware of her right to file charges with the EEOC nor was she aware of any of her causes of action. *Id.* at ¶ 18.

Crandall also states: "[A]t no time during my employment at Prudential did I ever receive or see a notice posted concerning my rights under either the federal or state laws." *Id.* at ¶ 19. Prudential has submitted affidavits of two personnel administrators. The personnel administrator at Prudential's South Plainfield office from January, 1982 through October, 1983 states that notices advising employees of their rights under the ADEA, Title VII and the New Jersey Law Against Discrimination were posted on the Employment Center's bulletin board located on the first floor and she observed these notices on a daily basis. Affidavit of Ginny Tolan ("Tolan Aff."), ¶¶ 3–5. The personnel administrator at Prudential's Woodbridge office from May, 1984 to December, 1987 states the same notices were posted on the Employment Center's bulletin board and on the employee cafeteria's bulletin board both located on the first floor. She states she also observed the notices on a daily basis. Affidavit of Mary Podolak ("Podolak Aff."), ¶¶ 2–5.

Crandall further states she delayed filing charges against Prudential out of fear of retaliation by Prudential against her husband who was still employed by Prudential. *Id.*, ¶ 20. After Crandall's husband resigned from Prudential, Crandall filed charges against Prudential with the EEOC on December 19, 1986. *Id.* at ¶ 21. Crandall filed charges with the New Jersey Civil Rights Division on December 23, 1986. *Id.*

On September 9, 1987 Crandall filed a complaint in this court. The complaint alleges federal question jurisdiction under Title VII and the ADEA. The complaint also alleges pendent jurisdiction over the New Jersey statutory and common law claims. ¶ 1.[4]

---

**2.** The presentation in which the reference to "dead wood" was made apparently took place on February 25, 1986. This was well after Crandall left Prudential in August, 1985.

**3.** Crandall's salary at Prudential when she resigned was $68,700.00. Tr. 192.

**4.** The First Count alleges Prudential failed to promote Crandall because of her age in violation of the ADEA and the New Jersey Law Against Discrimination. ¶ 34. The Second Count alleges Prudential discriminated against Crandall on the basis of sex in violation of Title VII and the New Jersey Law Against Discrimination. ¶ 36. The Third Count alleges Prudential wrongfully treated Crandall and her husband "as a unit" constituting unlawful discrimination on the basis of marital status in violation of Title VII and the New Jersey Law Against Discrimination. ¶ 39. The Fourth Count alleges Prudential's discriminatory conduct was so extreme that it constituted a "constructive discharge" of Crandall. ¶ 41. In the Fifth Count Crandall alleges Prudential's discriminatory treatment resulted, at least in part, from Crandall's investigation and uncovering of certain illegal insurance practices which offended a Prudential officer who was involved in the program where these practices existed. ¶ 43. Crandall alleges this retaliatory discrimination violated her rights and deprived her unfairly of her property interest in her employment and the economic benefits of her work. ¶ 44. The Sixth Count alleges Prudential caused Crandall to rely on its false promise of promotion to vice president and that Crandall, in fact, relied on

In a letter, dated April 7, 1988, the EEOC informed Crandall it had no jurisdiction over the Title VII aspects of her charge because the charge was untimely filed with the EEOC. Crandall Aff., Ex. H. On June 7, 1988 Prudential filed the instant motion to dismiss the complaint or in the alternative for summary judgment.

*Discussion*

### I. *Summary Judgment Standard*

Both parties have submitted documents in addition to the pleadings which are sufficient to allow a determination of this motion on summary judgment. Accordingly, I shall apply the summary judgment standard rather than the standard for a motion to dismiss for failure to state a claim. *See* Fed.R.Civ.P. 12(b); *Goldman v. Belden,* 754 F.2d 1059, 1066 (2d Cir.1985); *Mortensen v. First Federal Savings,* 549 F.2d 884, 891 (3d Cir.1977).

To prevail on a motion for summary judgment, the moving party must establish "there is no genuine issue as to any material fact and that [it] is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The district court's task is to determine whether disputed issues of fact exist; but the court cannot resolve factual disputes in a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). All evidence submitted must be viewed in a light most favorable to the party opposing the motion. *See Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

Although the summary judgment hurdle is a difficult one to overcome, it is by no means insurmountable. As the Supreme Court has stated, once the party seeking summary judgment has pointed out to the court the absence of a fact issue,

its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. ... In the language of the Rule, the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.' ... Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'

*Matsushita,* 475 U.S. at 586–87, 106 S.Ct. at 1356–57 (emphasis in original, citations and footnotes omitted).

The Court elaborated in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11 (citations omitted): "If the evidence [submitted by a party opposing summary judgment] is merely colorable ... or is not significantly probative ... summary judgment may be granted." The Supreme Court went on to note in *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986) (footnote omitted): "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it should be interpreted in a way that allows it to accomplish this purpose." Thus, once a case has been made in support of summary judgment, the party opposing the motion has the affirmative burden of coming forward with *specific* facts evidencing a need for trial. *See* Fed.R.Civ.P. 56(e).

### II. *Filing Limitations Period with the EEOC*

Prudential argues Crandall's claims under Title VII and the ADEA should be dismissed because they were not timely filed with the Equal Employment Opportunity Commission ("EEOC") according to the filing limitations provided for in these statutes.

---

this promise to her detriment. ¶¶ 46–47. In the Seventh Count Crandall alleges Prudential breached its employment contract with Crandall, wrongfully deprived her of the contract's full benefits and forced her to resign. ¶ 50. The Eighth Count alleges Prudential breached its covenant of good faith and fair dealing with Crandall. ¶ 52. In the Ninth Count Crandall brings a tort claim against Prudential alleging Prudential's malicious treatment of her was an intentional infliction of emotional distress. ¶ 54. The Tenth Count alleges Prudential breached a duty to preserve and produce Crandall's personnel records. ¶¶ 56–57.

**A. Title VII**

■ Under Title VII a plaintiff must first file a timely charge with the EEOC prior to bringing an action in federal court. *Seredinski v. Clifton Precision Products Co.*, 776 F.2d 56, 61 (3d Cir.1985). If the charge is not resolved at the administrative level, before bringing an action in federal court, the plaintiff must also receive a "Notice of Right to Sue" letter from the EEOC, 42 U.S.C. § 2000e–5(f)(1), or be entitled to such a letter.[5] *Perdue v. Roy Stone Transfer Corp.*, 690 F.2d 1091 (4th Cir. 1982).

As both parties concede, New Jersey is a so-called "deferral state" under Title VII— i.e. a state which has its own antidiscrimination statute. *See* 42 U.S.C. § 2000e–5(d). When a claim is brought in a deferral state, a Title VII charge must be filed with the EEOC within 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e). However, the statute provides "no charge may be filed by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the state or local law, unless such proceedings have been earlier terminated." 42 U.S.C. § 2000e–5(c).

In deferral states, the state proceedings are generally initiated by the EEOC upon receipt of a Title VII charge by forwarding notice to the state agency. *See Love v. Pullman*, 404 U.S. 522, 525, 92 S.Ct. 616, 618, 30 L.Ed.2d 679 (1972).[6] As a result, in deferral states the federal charge will not be deemed to have been filed with the EEOC until 60 days after proceedings under the state antidiscrimination statute have been initiated or until the state proceedings have been terminated if this takes less than 60 days.[7] *See Mohasco Corp. v. Silver*, 447 U.S. 807, 816, 100 S.Ct. 2486, 2492, 65 L.Ed.2d 532 (1980). Thus, in reality the 300 day filing period effectively becomes a 240 day filing period because the EEOC charge will not be deemed filed until 60 days after it is actually filed with the EEOC.[8] *See Mohasco*, 447 U.S. 807, 100 S.Ct. 2486. If a charge is filed with the EEOC over 240 days after the alleged discrimination occurred, it is unlikely this charge will be timely filed within the 300 day period because the charge will not be deemed filed until 60 days later, unless the state agency proceedings are terminated prior to the running of the 300 day period. Thus, the 300 day filing period under Title VII has been construed as a "240 days maybe" rule.[9]

**5.** Prudential argues in its moving brief that Crandall's Title VII action should be dismissed because in the complaint she failed to allege she received a Notice of Right to Sue letter from the EEOC or that she commenced her civil action within ninety days of receipt of the letter as required by the statute. *See* 42 U.S.C. § 2000e–5(f)(1). In response Crandall has submitted an affidavit stating she received a Notice of Right to Sue letter, dated April 7, 1988, some seven months after she instituted this action. (Crandall Aff., ¶ 24 and Ex. H.) Receipt of a Notice of Right to Sue letter is not a jurisdictional prerequisite to bringing an action in federal court. *Gooding v. Warner–Lambert Co.*, 744 F.2d 354, 358 (3d Cir.1984). The Third Circuit has reasoned that when a suit is pending and the right to sue letter is subsequently received, the suit is timely. *Id.* at 358 n. 5. Accordingly, the fact that Crandall instituted this action prior to receiving a right to sue letter is not reason for dismissing her Title VII claim.

**6.** Although in this case Crandall filed charges with the New Jersey Division of Civil Rights after she filed charges with the EEOC, it appears

the sixty-day time period begins to run from the date the charges are filed with the EEOC rather than from the date she filed with the state agency. *See Love*, 404 U.S. at 525, 92 S.Ct. at 618.

**7.** The Third Circuit has held that a claimant need not file a timely charge with the state agency in order for the 300 day filing limit to apply. *Howze v. Jones & Laughlin Steel Co.*, 750 F.2d 1208, 1210 (3d Cir.1984).

**8.** A charge which is filed between 240 and 300 days will not be timely unless the state agency proceedings are terminated before the 300 day period has expired. *See Mohasco*, 447 U.S. at 814 n. 16, 100 S.Ct. at 2419 n. 16.

**9.** The 240 day filing limit has been termed a "240 days maybe" rule because it is possible that the period would be extended beyond 240 days if the suit in federal court was instituted within 240 to 300 days and the state agency terminated its proceedings prior to the end of the 300 day period. *See Mohasco*, 447 U.S. at 814 n. 16, 100 S.Ct. at 2491 n. 16.

### B. ADEA

Despite the similarities in the statutes, the Third Circuit has construed the filing limitations under the ADEA differently than the filing limitations under Title VII. *See Seredinski*, 776 F.2d 61. As in Title VII, the ADEA specifies that the time for filing a charge with the EEOC is 300 days in a deferral state. 29 U.S.C. § 626(d)(2). Analogous to Title VII, the ADEA provides that the plaintiff may not bring suit in federal court until 60 days after the state proceedings have been initiated or until the state proceedings have been terminated. 29 U.S.C. § 633(b). Several provisions in the statutes, however, are distinct.

Unlike Title VII, the ADEA does not require that the plaintiff receive a "Notice of Right to Sue" letter from the EEOC prior to filing an action in federal court. *Seredinski*, 776 F.2d at 63. In addition, Title VII requires a claimant to file with the state agency before filing with the EEOC, 42 U.S.C. 2000e–5(c), whereas under the ADEA the claimant may file simultaneously with the state and federal agencies. 29 U.S.C. §§ 626(d) and 633(b). Moreover, the Title VII requirement that 60 days must pass after the initiation of state proceedings requires 60 days to pass before the claimant can file a charge with the EEOC, 42 U.S.C. § 2000e–5(c), whereas the analogous requirement under the ADEA, 29 U.S.C. § 633(b), requires 60 days to pass before a claimant can file a civil action in federal district court. Therefore, under the ADEA the federal court rather than the EEOC defers to the state agency. *Seredinski*, 776 F.2d at 63. Because of these distinctions the Third Circuit has concluded that the "240 day maybe" rule does not apply to ADEA claims, but rather the literal 300 day filing limit applies to such claims. *Id.*

### C. Crandall's Claims

Under Title VII Crandall was required to file a charge with the EEOC within 240 days "after the alleged unlawful employment practice occurred," 42 U.S.C. § 2000e–5(c), and under the ADEA Crandall was required to file a charge with the EEOC within 300 days of the alleged unlawful practice. 29 U.S.C. § 626(d)(2).

Prudential alleges the latest date on which the alleged unlawful employment practice occurred was July 1, 1985. Defendant's Moving Brief ("DMB"), at 6. This is the date when Crandall received the final notice that the position of Medical Director, PACRS GFSO, would not involve an immediate promotion to functional vice president as she had demanded. It was also the date on which the continuing dialogue between Crandall and Prudential came to an end.[10] Crandall, on the other hand, apparently argues the unlawful employment practice last occurred on September 9, 1985. This is the date on which Crandall stopped receiving her salary and benefits from Prudential and thus the date on which she alleges she was constructively discharged.[11] Plaintiff's Brief ("PB"), at 20.

Crandall filed her charge with the EEOC on December 19, 1986. Crandall Aff., ¶ 21. Thus, regardless of the date on which the unlawful employment practice occurred— July 1, 1985 or September 9, 1985—the EEOC charge was not filed within the 240/300 day filing period. The EEOC charge was filed well over one year from either of the dates on which the parties

---

**10.** In May, 1985 Prudential offered Crandall the position as Medical Director for Cost Containment, Group Department at the medical director level. By letter, dated June 11, 1985, Crandall stated she would accept this offer only if it came with the title of functional vice president. Around June 21, 1985 Prudential informed Crandall the functions of the previously offered position had changed and she was offered the position of Medical Director PACRS, GFSO also at the medical director level. She was also informed this position was expected to be at the functional vice president level in April, 1986. Around June 27, 1985 Crandall declined the second offer apparently because it was not immediately offered at the functional vice president level. In a letter, dated July 1, 1985, Prudential confirmed Crandall's rejection of the second offer.

**11.** As previously mentioned, Crandall left Prudential on August 2, 1985. However, she continued to receive full salary and benefits from Prudential until September 9, 1985.

contend the unlawful employment practice occurred.

The time requirements of the ADEA and Title VII are not jurisdictional. Rather, the time limits are in the nature of a statute of limitations and thus are subject to equitable tolling. *Hart v. J.T. Baker Chemical Corp.*, 598 F.2d 829, 833 (3d Cir.1979) (Title VII); *Bonham v. Dresser Industries, Inc.*, 569 F.2d 187, 192–93 (3d Cir.1977), *cert. denied*, 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978) (ADEA). Thus, despite the fact they were filed beyond the filing limitations period, Crandall's claims could be timely if there is any basis for tolling the filing limitations. Therefore, consideration must be given to Crandall's various arguments that the 240/300 day filing period should be tolled.

Crandall places the greatest emphasis on her argument that Prudential's failure to post the required EEOC notices tolled the filing limitations period until August 5, 1986 when Crandall first sought legal counsel and acquired actual knowledge of her rights. PB at 17.

As Crandall correctly points out, an employer has a statutory obligation to post in conspicuous places notices of the pertinent provisions of Title VII and the ADEA. *See* 42 U.S.C. § 2000e–10; 29 U.S.C. § 627. Failure to post such notices has been held to toll the two year statute of limitations applicable to the ADEA. *Callowhill v. Allen–Sherman–Hoff Co., Inc.*, 832 F.2d 269, 273–4 (3d Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1228, 99 L.Ed.2d 428 (1988). In *Callowhill* the court reasoned the statute of limitations should be tolled because the defendant contributed to the plaintiff's late filing by its failure to post the notices. *Id.* at 273. Although *Callowhill* applied equitable tolling to the ADEA's two year statute of limitations, the same rationale is applicable to equitably toll the filing limitations period with the EEOC. *See Bonham*, 569 F.2d 187.

Despite the possibility of tolling due to failure to post the required notices, such tolling is not available in the case at bar. In a closely analogous case it has been held that a claimant's assertion that he had no knowledge of a posted notice was insufficient to toll the filing period. *Butz v. Hertz Corp.*, 554 F.Supp. 1178, 1181–82 (W.D.Pa.1983); *see also Byers v. Follmer Trucking Co.*, 763 F.2d 599 (3d Cir.1985) (citing *Butz*, the Court of Appeals upheld district court's rejection of plaintiffs' testimony they had never seen an ADEA poster and district court's refusal to toll filing limitations).

In *Butz*, in opposition to a motion for summary judgment, the claimant asserted the 300 day filing period should be tolled because (1) she was never personally informed of her rights under the ADEA and (2) she had no knowledge of the existence of an ADEA poster. 554 F.Supp. at 1181. The court dismissed the claimant's first argument by noting that the employer had no duty to personally inform each employee of his rights under the ADEA. *Id.* Concerning the second argument, the defendant had submitted affidavits which identified the exact bulletin board where the ADEA poster was hung. *Id.* The claimant submitted an affidavit denying any knowledge of the existence of the poster. *Id.* In concluding that the claimant's assertion was not sufficient to toll the filing period, the court reasoned:

> As it stands, [the claimant's] testimony amounts essentially to "I never saw the poster" rather than "I saw the bulletin board and the poster was not there." The mere assertion that she had no knowledge of such a poster or never saw the poster does not raise an issue of fact, therefore, [sic] cannot toll the statute.

*Id.* at 1182 (citations omitted).

In the case at bar Prudential has submitted the affidavits of the personnel administrators at Prudential's South Plainfield office from January, 1982 through October, 1983 and the Woodbridge office of Prudential from May, 1984 through December, 1987. *See* Tolan Aff.; Podolak Aff.[12]

12. The original affidavits of Podolak and Tolan ("Podolak Aff." and "Tolan Aff.") were dated June 6, 1988. Podolak and Tolan also submitted Supplemental Affidavits, dated June 30, 1988, and Second Supplemental Affidavits, ("Po-

822

These personnel administrators worked at the South Plainfield and Woodbridge offices during the time Crandall worked at these offices and during the time the charges in the complaint are alleged to have occurred.

The affidavits submitted by Prudential state that notices advising employees of their rights under the ADEA, Title VII and the New Jersey Law Against Discrimination[13] were posted on the Employment Center bulletin board at both offices and also on the employee cafeteria's bulletin board at the Woodbridge office. All of these bulletin boards were located on the first floor of the respective Prudential offices. Tolan Aff., ¶¶ 3–4; Podalak Aff., ¶¶ 3–4. Both personnel managers attest to observing the notices on a daily basis. Tolan Aff., ¶ 5; Podalak Aff., ¶ 5. Crandall, on the other hand, has submitted an affidavit which states: "At no time during my employment at Prudential did I ever receive or see a notice posted concerning my rights under either the federal or state laws." Crandall Aff., ¶ 19.

■ Crandall's allegation she never received a notice of her rights cannot toll the filing period because Prudential had no duty to personally inform her of her rights. *See Butz*, 554 F.Supp. at 1181. The statutes require the employer to post the notices in a conspicuous place. *See* 42 U.S.C. § 2000e–10; 29 U.S.C. § 627. The employer does not have a duty under the statutes to make every employee aware of his or her rights.

Likewise, Crandall's claim that she never saw any notices does not raise any issues of fact which might require the tolling of the filing period. *Id.* at 1182. Crandall's assertion she did not see the notices does not mean they were not posted. Crandall states only that she never saw the notices. She does not state she saw the bulletin boards where Prudential claims the notices were posted, and the notices were not in fact posted on these bulletin boards. Thus, there is no material factual dispute on this point. Accordingly, the filing period cannot be tolled on this basis. *See Butz*, 554 F.Supp. at 1182.

Crandall submitted a supplemental affidavit ("Crandall Supp.Aff.") stating in May, 1988 she visited the employment office at Prudential's Woodbridge office. Crandall Supp.Aff., ¶ 4. She states she saw only one EEOC notice on the bulletin board in that office which informed prospective employees, but not present employees, of their rights under the anti-discrimination laws. *Id.* at ¶ 5. Because the visit to Prudential recounted in Crandall's supplementary affidavit occurred over two and one-half years after she terminated her employment at Prudential, this supplemental affidavit is irrelevant to the issue of whether the required notices were posted at the time the discriminatory acts complained of in the complaint occurred. Accordingly, Crandall's supplemental affidavit does not create a factual issue.[14]

Crandall submitted a Second Supplementary Affidavit[15] ("Crandall 2nd Supp.Aff.")

dolak 2nd Supp.Aff." and "Tolan 2nd Supp. Aff."), dated July 15, 1988. *See* discussion *infra.*

**13.** At oral argument counsel for Crandall asserted the affidavits submitted by Prudential do not mention the ADEA. 7/20/88 Tr. at 12. In fact, Prudential's affidavits state: "The posted notices included those advising individuals of their rights under the *Age Discrimination in Employment Act,* Title VII of the Civil Rights Act and the New Jersey Law Against Discrimination." Tolan Aff., ¶ 4; Podolak Aff., ¶ 4 (emphasis added).

**14.** Along with her supplemental affidavit, Crandall submitted a letter, dated May 27, 1988, apparently sent to Crandall by the EEOC. The letter states the EEOC has identified Crandall's ADEA charge as one which might be affected by

the Age Discrimination Claims Assistance Act of 1988 (the "Claims Act"). *See* Crandall Supp.Aff., Ex. A. The Claims Act restores the ADEA claims of certain individuals whose claims were barred under the ADEA two year statute of limitations due to delays in EEOC investigations. *See* Pub.L. No. 100–283, 102 Stat. 78 (1988). The Claims Act does not effect ADEA claims which were not timely filed within the 300 day filing limitations period. *See id.* § 3(1). Therefore, the Claims Act has no effect on the untimely filing of Crandall's ADEA claim.

**15.** This affidavit, along with the Affidavit of Sharon Spulik, *see* discussion *infra,* was submitted on Friday, July 8, 1988 at 4:30 p.m. immediately prior to the Monday, July 11, 1988 return date on which this motion was to be

stating that the bulletin board in the employment center at the Woodbridge office is unobservable to anyone entering that office because the bulletin board is behind the desk and chair of an employee. (¶ 3.) Crandall states: "In order to read a notice [on the Employment Center bulletin board], it would be necessary, and awkward, to go behind the chair of the person sitting at the desk. Any notices posted on that board would not be easily accessible." *Id.* Crandall also states that while employed at Prudential, she had few occasions to visit the Employment Office. *Id.* at ¶ 4.

Through the submission of her Second Supplementary Affidavit Crandall appears to be contesting whether the required EEOC notices were posted "conspicuously" as required by 42 U.S.C. § 2000e-10 [16] and by 29 U.S.C. § 627. Under the statutes, "[n]otice is sufficient if it is posted conspicuously so that employees have a meaningful opportunity for becoming aware of their ... rights." *Morse v. Daily Press, Inc.*, 826 F.2d 1351, 1353 (4th Cir.), *cert. denied,* — U.S. ——, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987) (ADEA case).

Prudential has submitted supplemental affidavits which state that the Employment Centers at both Woodbridge and South Plainfield were open to members of the public who were interested in job opportunities with Prudential as well as to all employees. *See* Second Supplemental Affidavit of Mary Podolak ("Podolak 2nd Supp. Aff."), ¶ 2; Second Supplemental Affidavit of Ginny Tolan ("Tolan 2nd Supp.Aff."), ¶ 2. The Employment Center at the Woodbridge office was generally open to all employees between 7:45 a.m. and 4:30 p.m. and the Employment Center at the South Plainfield office was open between 8:00 a.m. and 4:00 p.m. The Employment Center bulletin boards where the EEOC notices were posted in both of these offices are approximately three feet high and five feet wide and are located in the reception areas. According to Prudential, the bulletin boards were readily observable by anyone who visited the reception areas. Podolak 2nd Supp.Aff., ¶¶ 2, 4; Tolan 2nd Supp. Aff., ¶¶ 3–4.

Accepting for the purposes of this motion Crandall's contention the Woodbridge Employment Center bulletin board was not conspicuous, Prudential has still established the required EEOC notices were conspicuously posted on other bulletin boards. Crandall's affidavit does not controvert Prudential's establishment by affidavits, that the required EEOC notices were conspicuously posted in the Employment Center at the South Plainfield office and in the Employee Cafeteria at the Woodbridge office.

Prudential has established by uncontroverted affidavits that the Employee Cafeteria in the Woodbridge office was open to all employees between the hours of 7:00 a.m. to 9:00 a.m. and 11:30 a.m. to 1:30 p.m. each working day and the bulletin board where the EEOC notices were posted was located on or near the exit door and readily observable by anyone who left the cafeteria. Podalak 2nd Supp.Aff., ¶¶ 3, 5. Prudential's establishment by affidavits that the Employment Center Bulletin Board where the EEOC notices were posted at the South Plainfield office were readily observable is also uncontroverted. Thus, Prudential has shown that the required EEOC notices were posted conspicuously both at the Woodbridge and South Plainfield offices.

A single posting of the required notice has been held sufficient to satisfy 29 U.S.C. § 627 so long as employees are likely to see the notice. *See Morse*, 826 F.2d at 1353. In the case at bar Prudential has established that at least two notices were conspicuously posted at locations where em-

---

argued. Crandall was on notice of this motion in early April, 1988 and had a copy of Prudential's moving papers at that time. Crandall's opposition and Prudential's reply brief were filed on June 7, 1988. On Monday, July 11, 1988, the oral argument was adjourned due to the fact that counsel for Crandall was unavailable. Counsel to Prudential was given until July 15, 1988 to respond to the late filings of Crandall. The oral argument occurred on July 20, 1988.

16. 42 U.S.C. § 2000e-10 requires every employer to post the required EEOC notices "in conspicuous places upon its premises where notices to employees ... are customarily posted."

ployees were likely to see them. Accordingly, Crandall's Second Supplementary Affidavit does not preclude summary judgment on the grounds that the filing limitations period might be tolled.

Crandall has also submitted affidavits from four former employees of Prudential. One of these affidavits is from Crandall's husband who states he never saw the required EEOC notices on the bulletin boards near the employee health office in the South Plainfield Office from November, 1986 to November, 1978. Affidavit of Charles E. Crandall, M.D., ¶¶ 2–4. Crandall's husband also states at no time did he ever see the required EEOC notices posted at Prudential's Woodbridge Office when he moved there in 1985. *Id.*, ¶ 5, 7. In the second affidavit, George Kline, M.D. states that during the time he worked at Prudential's South Plainfield Office, from 1975 to 1984, he never saw the required EEOC notices on the bulletin boards located in the vicinity of the Employee Health Offices. Affidavit of George Kline, M.D., ¶¶ 2–3. In the third affidavit submitted by Ethel Ulrich, she states she was employed with Prudential as a medical review typist from December, 1982 to May, 1986. Affidavit of Ethel Ulrich, ¶ 2. Ulrich states she does "not recall ever seeing or reading [the required EEOC] notices posted on the bulletin boards" at the South Plainfield Office. *Id.*, ¶ 3. Ulrich states when she moved to the Woodbridge Office in 1984 or 1985 at no time did she ever see the required EEOC notices posted on any bulletin boards in that office. *Id.*, ¶¶ 4–5.

Prudential in turn has submitted supplemental affidavits which state that the bulletin boards which Crandall's husband, George Kline and Ethel Ulrich claim to have viewed, are not the bulletin boards on which the EEOC notices were posted. *See* Supplemental Affidavits of Mary Podolak and Ginny Tolan.

I need not address the issue of whether the bulletin boards viewed by Crandall's affiants were the bulletin boards on which Prudential affirms the required EEOC notices were posted. The three affidavits from Crandall's husband, George Kline and Ethel Ulrich add nothing to Crandall's own affidavit which states she never saw the required notices. The affidavits of these three former employees only state that they never saw the EEOC posters on various bulletin boards. They do not state that they saw the bulletin boards where Prudential claims the notices were posted, and the notices were not posted on those bulletin boards. The mere assertion that they never saw the notices does not raise an issue of fact and therefore the filing limitations period cannot be tolled. *See Butz*, 554 F.Supp. at 1182.

Crandall also submitted a fourth Affidavit from Sharon Spulick ("Spulick Aff.") who was employed at Prudential for seven years as a clerk typist. Spulick states from approximately 1982 to 1984 she was assigned to the Communications & Training Department at Prudential's South Plainfield office. As part of her duties, Spulick typed employee information notices which comprised want ads, the daily menu and news items of interest to the employees. Spulick Aff., ¶ 2. Spulick states it was part of her regular duties to hang these notices on the six "bulletin boards for employees" which she serviced and to screen all items on the bulletin boards and remove any notices which were not approved or needed. *Id.* at ¶¶ 3–5. Spulick states the six bulletin boards for employees which she serviced along with the Communications and Training Department bulletin board never carried the required EEOC notices. *Id.* at ¶ 5. Spulick was transferred to the Medical Department in 1985; she further states she never saw any notice relating to age or sex discrimination rights on any bulletin board at the South Plainfield office. *Id.* at ¶ 6. In the latter part of 1985 Spulick moved to the Woodbridge office; she states she never saw a notice in that office relating to the rights of an employee under federal or state age or sex discrimination laws. *Id.* at ¶ 7.

These assertions by Spulick do not controvert Prudential's position that the required EEOC notices were posted on the Employment Center bulletin board on the first floor at both the South Plainfield and Woodbridge offices, (*see* Tolan Aff., ¶¶ 3;

Podolak Aff., ¶¶ 3–4), and on the employee cafeteria's bulletin board located on the first floor of the Woodbridge office. *See* Podolak Aff., ¶ 3. Spulick's affidavit does not state that the required EEOC notices were not posted on these bulletin boards. The affidavit never mentions the Employment Center bulletin boards on the first floor in the South Plainfield or Woodbridge offices. Nor does the Spulick affidavit mention the bulletin board in the employee cafeteria at the Woodbridge office. Moreover, Spulick admits she "rarely, if ever went to the Employment Center at either facility" and she states she does not recall "any such discrimination items" posted in the area of the Employment Center before she was transferred from the Woodbridge Office in 1987. *Id.* at ¶ 8. This final assertion does not create an issue of fact because Spulick merely states she does not recall the required EEOC notices being posted in the Employment Centers. She does not say she saw the Employment Center bulletin boards and the notices were not posted on them. This does not create a factual dispute and therefore the filing limitations cannot be tolled. *See Butz*, 554 F.Supp. at 1182.

Crandall also argues the filing limitations should be tolled because the alleged violations of her rights were not immediately apparent. According to Crandall, the quadrupling of her duties and denial of her promotion and salary increase were subtle forms of discrimination undertaken as a pretext to force her to leave. Because it was not immediately apparent her rights were violated by these acts, Crandall argues the filing limitations should be tolled until the time Crandall was aware of all the facts supporting the alleged violations of her rights.

■ In support of this argument Crandall relies on *Reeb v. Economic Opportunity Atlanta, Inc.*, 516 F.2d 924, 930 (5th Cir.1975). In *Reeb*, the employer refused to renew the plaintiff's employment contract because of what the employer termed a "limitation of funds." *Id.* at 926. The plaintiff initially accepted this rationale for the employer's decision. Subsequently the plaintiff learned her previous position had been refilled by an allegedly less qualified male employee. *Id.* The plaintiff immediately filed charges under Title VII with the EEOC. The district court dismissed the plaintiff's action as untimely because it was not filed within the filing limitations period under Title VII. *Id.*

On appeal the Fifth Circuit noted the defendants had not demonstrated or alleged any prejudice from the plaintiff's failure to comply with the filing limitations. *Id.* at 930. The court also noted the EEOC had considered the case on its merits, thus precluding the assumption the case was stale. *Id.*

Beyond these facts, the court placed most of its emphasis on the allegation that the employer sought to mislead the plaintiff by telling her the refusal to renew her contract was based on the lack of funds. *See id.* The plaintiff testified at trial that she did not question the employer's explanation because she had previously been dismissed by the same employer for lack of funds and thus the justification seemed plausible. *Id.* The court discussed the general rule that a statute of limitations "does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." *Id.* Where wrongful concealment is involved, the court pointed to the related corollary that "a party responsible for such wrongful concealment is estopped from asserting the statute of limitations as a defense." *Id.* The court noted the EEOC had previously applied this principle to an administrative action before it. *Id.* Emphasizing the allegation that the employer had supplied false or misleading information to the plaintiff, the court embraced the above principles and remanded the case to the district court for further proceedings. *Id.* at 931.

The case at bar is distinct from *Reeb* because there is no allegation or indication that Prudential provided false or misleading information to Crandall in an effort to force her to leave and then hired an allegedly less qualified person who was younger

or male. *See* 516 F.2d at 926. Crandall alleges Prudential's denial of her requested promotion and its failure to propose a salary increase were a pretext to force her to leave. PB at 17–18. She also alleges the proposed quadrupling of her duties was also a pretext for dismissal which she did not realize until she learned in the Summer of 1986 that these duties had been subsequently apportioned among three physicians. PB at 18.

Crandall's allegations are not of the same nature as those in *Reeb* where the plaintiff alleged the employer lied to her about the reason for her dismissal and then hired a less qualified male. *See Reeb*, 516 F.2d at 926. There is no allegation Prudential lied to Crandall. Moreover, Prudential did not fire Crandall; Crandall resigned. There is no allegation Crandall was replaced by a less qualified person who was younger or male.[17] Because there is no allegation Prudential lied to or sought to mislead Crandall, there is no basis for applying the estoppel principle to the filing requirement which was discussed in *Reeb*. *See id.* at 930. The allegations made by Crandall do not warrant the equitable tolling of the filing limitations on this basis.

■ Crandall further argues the filing limits should be tolled because (1) she delayed filing her EEOC charge out of fear of retaliation against her husband who continued to work at Prudential (Complaint, ¶ 29); and (2) the disparate treatment of her husband constituted continuing discrimination. PB at 19.

Fear of retaliation has been explicitly rejected as a grounds for equitable tolling of the filing limits under the ADEA. *Platt v. Burroughs Corp.*, 424 F.Supp. 1329, 1333 (E.D.Pa.1976). As the *Platt* court reasoned:

The fear of employer retaliation is urged as an excuse for not complaining to the Secretary of Labor and the state agency. That such a fear is genuine and one to be expected was considered by Congress because retaliation is specifically forbidden in 29 U.S.C. § 623(d).

To permit the fear of retaliation to operate as an excuse for failure to comply with the time requirements as to notice, would be to ignore the express language of the statute. The individual who thinks he has been the victim of any age discrimination must take the statute as he finds it. He is not obliged to give timely notice when he thinks he has been discriminated against, because of his fear of retaliation, but if he does not, he should be found to have, by conduct waived his right to the statutory benefits as respects the alleged acts of discrimination. One is reminded of the truism "you can lead a horse to water, but you cannot make him drink". Congress passed a statute but it cannot make the alleged victims of discrimination comply with its provisions. It then becomes a responsibility of the court not to subvert the intention of Congress out of sympathy for the employee, by a judicial rewriting of it for the benefit of one who has slept on his rights.

*Id.* (citation omitted).

In the case at bar Crandall's fear of retaliation against her husband is not sufficient to toll the filing limitations. As the *Platt* court reasoned, to allow fear of retaliation to toll the filing limitations would be to ignore the express language of the statute which establishes the filing limitations. *See id.* at 1333. If a plaintiff were permitted to toll the filing limitations out of fear of retaliation, the filing limitations would effectively be tolled for so long as the plaintiff, or a third party with a relationship to the plaintiff, was working for the employer. The limitations would then have practically no effect. Accordingly, I decline to toll the filing limitations on the basis of Crandall's fear of retaliation against her husband.

■ Crandall's argument that the disparate treatment of her husband constitutes

---

**17.** Crandall alleges Prudential placed an advertisement for a position entailing only some of her previous responsibilities at a salary substantially higher than that paid to Crandall. Complaint, ¶ 31. However, there is no allegation a less qualified person who was younger or male filled this position.

continuing discrimination is also merit-less.[18] This is an action by Crandall against Prudential. Crandall's husband is not a party to this action. Thus, any alleged discrimination against Crandall's husband is not the subject of this action. Crandall's husband, rather than Crandall, is the only one with standing to bring an action concerning the alleged discrimination against him. Thus, Crandall's argument of continuing discrimination against her husband does not toll the filing limitations period.

Accordingly, there is no basis for equitable tolling of the filing limitations under Title VII or the ADEA. Because Crandall's claims under Title VII and the ADEA are untimely, they are dismissed.[19]

III. *Statute of Limitations under the ADEA*

In addition to the time limitations on filing with the EEOC previously discussed, the ADEA also incorporates by reference the statutes of limitations for filing an action in federal court as specified in the Portal to Portal Act of 1947.[20] 29 U.S.C. § 626(e). The Portal to Portal Act provides an action in federal court must be commenced within three years of the date it accrued where there are "willful" violations and within two years for all other violations. 29 U.S.C. § 255(a). Prudential argues that Crandall's ADEA claim is barred by the two year statute of limitations applicable to claims under the ADEA. DMB, at 10–13; Defendant's Reply Brief ("DRB"), at 8–10.

The question of whether Crandall's claims under the ADEA are barred by the statute of limitations depends upon when her cause of action accrued and whether the three year or two year statute of limitations applies. Determining when a cause of action accrued can be a difficult task. The Supreme Court has held that a discrimination cause of action accrues on the date the alleged discriminatory action is taken and made known to the alleged victim. *Delaware State College v. Ricks,* 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980).

Prudential alleges Crandall's cause of action accrued at the latest on July 1, 1985; the date she received notice the position of Medical Director PACRS, GFSO would not involve an immediate promotion to functional vice president as she had requested. DRB at 10. Crandall alleges her cause of action accrued on September 9, 1985; the date she stopped receiving her salary and benefits from Prudential. PB at 20. Crandall alleges she was constructively discharged on this date. Beyond these assertions of the parties in their briefs, neither party has submitted anything to resolve the question of when the cause of action accrued.

In order to determine whether the three year or two year statute of limitations applicable to claims under the ADEA applies, it must be determined whether Prudential's alleged violations were willful. For the purposes of the Portal to Portal Act statute of limitations, an employer's labor law violation is considered willful if the employer either knew its conduct was prohibited or showed reckless disregard for whether the conduct was prohibited. *McLaughlin v.*

**18.** In support of this argument Crandall cites *Held v. Gulf Oil Co.,* 684 F.2d 427 (6th Cir.1982). The *Held* court reasoned that because of the continuing discrimination throughout the plaintiff's employment, the action was not time barred. *Id.* at 432. *Held* did not in any way address the effect of continuing discrimination against a third party on the filing limitations.

**19.** At oral argument counsel for Crandall suggests summary judgment barring Crandall's claims under the filing limitations should not be granted because discovery is needed on Crandall's allegation of retaliation in that "something she had reported in the insurance area actually may have had some influence on letting her go."

7/20/88 Tr. at 14. At the time the complaint was filed on September 9, 1987, Crandall was aware of this allegation. *See* Complaint, ¶ 14. Thus, she has had adequate time for discovery on this issue and her request for additional time for discovery at this late date is not justified.

**20.** Other than the limitations on filing with the EEOC previously discussed, and the requirement that a plaintiff commence an action in federal court within 90 days of receipt of the "right to sue letter," *see supra* n. 3, Title VII does not have a statute of limitations analogous to that under the ADEA.

*Richland Shoe Co.,* —— U.S. ——, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988) (interpreting Portal to Portal Act statute of limitations which is applicable to proceedings under the Fair Labor Standards Act ("FLSA")). This test of willfulness has been applied to an employer's alleged violation of the ADEA. *EEOC v. Westinghouse,* 646 F.Supp. 555 (D.N.J.1986), *notice of appeal filed* March 12, 1987.[21]

When an employer acts reasonably and in good faith, its conduct has been held not to be in reckless disregard for the law. *See Transworld Airlines, Inc. v. Thurston,* 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985) (employer's consultation with legal counsel and union prior to adopting retirement program held to show conduct was not in reckless disregard for ADEA). The Third Circuit has interpreted *Thurston* to require "some additional evidence of outrageous conduct." *Dreyer v. Arco Chem. Co.,* 801 F.2d 651, 658 (3d Cir.1986), *cert. denied,* 480 U.S. 906, 107 S.Ct. 1348, 94 L.Ed.2d 519 (1987).

Prudential argues Crandall has not alleged any facts to show that Prudential engaged in willful violations of the ADEA. DMB at 11–13; DRB at 9. Crandall responds that she has alleged willful violations. PB at 20. Again, the parties have provided nothing as to this issue beyond the unsubstantiated assertions in their briefs.

Thus, there are factual disputes as to the issues of when Crandall's cause of action accrued and whether the alleged violations were willful. Because of these factual disputes and because I have previously dismissed Crandall's claims under both Title VII and the ADEA for untimely filing with the EEOC, I decline at this time to grant summary judgment on Prudential's argument the ADEA claims are barred by the statute of limitations.

## IV. *Pendent Jurisdiction Over State Law Claims*

The next issue which arises is whether this court should exercise pendent jurisdiction over Crandall's state law claims. Explaining pendent jurisdiction, the Supreme Court has reasoned:

> [The federal court's power of pendent jurisdiction] need not be exercised in every case in which it is found to exist. It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them. Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

*Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

With regard to this principle, the Third Circuit has reasoned:

> If it appears that the federal claim is subject to dismissal under F.R.Civ.P. 12(b)(6) or could be disposed of on a motion for summary judgment under F.R.Civ. P. 56, then the court should ordinarily refrain from exercising jurisdiction in the absence of *extraordinary* circumstances. As the Second Circuit noted in *Kavit,*
>
> > "this is essential to avoid a result where, as has been happily said, 'the dog would be wagged by his tail.'"

*Tully v. Mott Supermarkets,* 540 F.2d 187, 196 (3d Cir.1976) (emphasis added) (quoting

---

**21.** The *Westinghouse* case applied the standard established in *Brock v. Richland Shoe Co.,* 799 F.2d 80, 91 (3d Cir.1986) in which the court held that for the purposes of the Portal to Portal Act statute of limitations applicable to FLSA proceedings, a violation is considered "willful" if the employer knew or showed reckless disregard for whether its conduct was prohibited by the FLSA. The *Richland Shoe* case was affirmed by the Supreme Court in *McLaughlin,* —— U.S. ——, 108 S.Ct. 1677, 100 L.Ed.2d 115.

**829**

*Kavit v. A.L. Stamm & Co.*, 491 F.2d 1176 (2d Cir.1974)).

In *Tully*, the class A shareholders of a company brought an action against the class C shareholders of the same company alleging violations of the Securities Exchange Act of 1934. The complaint also charged the defendants with state law breach of fiduciary duty, fraud, interference with contractual relations and violation of the New Jersey Securities Act. *Id.* at 195. The plaintiffs sought both monetary relief and an order rescinding sale of the stock. The district court entered judgment in favor of the plaintiffs and ordered, *inter alia*, that the sale of the stock be rescinded. *Id.* at 189. On appeal the Third Circuit held the plaintiffs lacked standing to sue under the Act and dismissed the plaintiffs' federal claims. *Id.* at 191–5.

Applying the above quoted principles the court concluded:

> Since there was no substantial federal claim to which the state claims could be appended, the primary justification for the exercise of pendent jurisdiction was absent. Accordingly, the state claims should have been dismissed.

*Id.* at 196 (citation omitted).

The Third Circuit went on to clarify the meaning of exceptional circumstances.[22]

> Nor can the court's exercise of jurisdiction be justified on the ground that "exceptional circumstances" were present which removed the case from an application of the general rule requiring dismissal. Notwithstanding the already substantial time devoted to the case and the expense incurred by the parties, we do not believe that the hallmark considerations of "judicial economy, convenience, and fairness to litigants" dictate that the pendent claims be entertained. It is indeed unfortunate that the case has progressed to the appellate level following a trial by the district court when it should have been dismissed on the pleadings for lack of standing. The fault, however, cannot be attributed to any lack of diligence on the part of the defendants who at all times during the proceedings have vigorously asserted their standing objections. Were we to sustain the district court's exercise of pendent jurisdiction merely because of the time already invested in litigating the state claims, we would be insulating from a review a significant class of cases solely because an alleged error had been perpetuated through the trial process. The needless expenditure of time and energy occasioned in the first instance by the improper exercise of pendent jurisdiction would thus become the justification for allowing the incorrect ruling to stand. Absent other circumstances not present here, such as the invocation of a significant federal policy, we find this justification to be insufficient to sustain the district court's exercise of pendent jurisdiction.

*Id.* (citation omitted).

Because Crandall's claims under Title VII and the ADEA have been dismissed on summary judgment, the pendent claims under New Jersey law should also be dismissed. *See Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139; *Tully*, 540 F.2d at 196. This is not a case where "the state claim is so closely tied to questions of federal policy that the argument for exercise of pendent jurisdiction is particularly strong." *See Gibbs*, 383 U.S. at 727, 86 S.Ct. at 1139. Nor are there any other exceptional circumstances which would justify the invocation of this court's pendent jurisdiction. *See Tully*, 540 F.2d at 196.

Some courts have retained and decided state claims even though the federal claims had been dismissed before trial. However, these cases are limited to situations where judicial economy weighs strongly in favor of deciding the state law claim. *See e.g. Lentino v. Fringe Employee Plans, Inc.*, 611 F.2d 474, 479–80 (3d Cir.1979) (where federal claim was not dropped until morning of trial, the parties and witnesses were ready for trial, and case had consumed more than one year of pretrial proceedings, the district court could have properly con-

---

22. Presumably the court's use of the term "extraordinary circumstances" is interchangeable with its use of the term "exceptional circumstances." *See Tully*, 540 F.2d at 196.

cluded that the interest of judicial economy outweighed state's interest in adjudicating its own claims).

Similar issues of judicial economy are not implicated in the case at bar. The complaint in this case was filed on September 9, 1987. The only pretrial proceedings have concerned scheduling and discovery and the parties are not prepared to immediately go to trial. Therefore, there is no basis for exercising pendent jurisdiction over the state law claims. Accordingly, the remaining state law claims are dismissed without prejudice.

*Conclusion*

For the reasons stated above, Prudential's motion for summary judgment is granted as to the untimely filing of the Title VII and ADEA claims with the EEOC. Crandall's claims under Title VII and the ADEA are dismissed with prejudice. I decline to exercise pendent jurisdiction over Crandall's state law claims. The state law claims are dismissed without prejudice.